

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00039-CR
_____

THE STATE OF TEXAS, Appellant

V.

CODY JOE POSEY, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 20829

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

In July 2006, Cody Joe Posey was convicted of criminally negligent homicide in association with a fatal traffic accident wherein driving while intoxicated (DWI) was not a factor. The jury found that the automobile driven by Posey in the commission of that offense was used as a deadly weapon. The jury assessed punishment at two years' imprisonment, but recommended that the sentence be probated. In October 2008, the State moved to revoke Posey's community supervision based on the commission of a new offense (DWI) and for Posey's failure to perform the required community service. The trial court found the State's allegations to be true, sentenced Posey to twenty-two months' confinement and, in his oral comments, left open the possibility of shock community supervision. On January 7, 2009, Posey filed a motion requesting shock community supervision, and the trial court granted that motion after a hearing at which the State argued the trial court was without the authority to order shock community supervision.

The State appeals the trial court's order granting Posey's motion for shock community supervision. The State contends that the trial court reversibly erred by arresting or modifying the judgment revoking community supervision by suspending the execution of Posey's sentence and by placing him on shock community supervision. In response to the State's contentions, Posey first raises the issue of the State's right to appeal this order under Article 44.01 of the Texas Code of Criminal Procedure and, consequently, this Court's jurisdiction to hear the appeal. TEX. CODE CRIM.

2

PROC. ANN. art 44.01 (Vernon Supp. 2009).  As to the merits of the State's appeal, Posey responds that he was eligible for shock community supervision.  The State asks the Court to reverse and remand the matters to the trial court with instructions to reinstate the jury's original two-year sentence, rather than the twenty-two-month sentence imposed by the trial court upon revocation of community supervision since the twenty-two-month sentence is below the minimum punishment for a third-degree felony.

Critical to an understanding of the issues in this matter is the recognition that under Article 42.12 of the Texas Code of Criminal Procedure, there are some offenses for which community supervision can be granted by a judge only if it has been recommended by a jury.  TEX. CODE CRIM. PROC. ANN. art 42.12, § 4 (Vernon Supp. 2009).

## II.      ANALYSIS

### A.      The State's Right to Appeal; This Court's Jurisdiction to Hear It

Posey argues that the State lacks statutory authority to bring this appeal.  It relies primarily on *State v. Ramirez*, 62 S.W.3d 356 (Tex. App.—Corpus Christi 2001, no pet.), in which the court addressed a factually similar situation and dismissed the State's appeal after having concluded that Article 44.01 of the Texas Code of Criminal Procedure did not authorize the State to appeal the trial court's order of shock community supervision.  In *Ramirez*, a jury originally recommended community supervision for Ramirez after he pleaded guilty to sexual assault of a child, an offense for which initial community supervision was available only upon the recommendation of a jury.  *Id.*

3

at 356–57; *see* TEX. CODE CRIM. PROC. ANN. art 42.12, § 3g(a)(1)(H) (Vernon Supp. 2008). The

trial court revoked that community supervision and sentenced Ramirez to four years' imprisonment.

*Ramirez*, 62 S.W.3d at 356. Ramirez timely filed a motion for shock community supervision and

the trial court granted that motion over the State's objection. *Id.* at 357. The State maintained that

the trial court lacked the authority to grant shock community supervision since Section 3g would

have rendered Ramirez ineligible for judge-ordered initial community supervision. *Id.*

The Corpus Christi court, however, never reached the issue concerning the trial judge's

authority to impose shock community supervision when Section 3g would have disallowed the trial

court from ordering initial community supervision. *See id.* at 358. Instead, the Corpus Christi court

concluded that the State lacked the authority to appeal the trial court's order granting shock

community supervision. Noting the State's limited right of appeal, it continued:

> The State must invoke one of the specific instances in which the Legislature has
> granted it the right to appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01. The
> State has not invoked a specific statute in this case; the only applicable ground is the
> State's right to appeal "a sentence in a case on the ground that the sentence is illegal."
> TEX. CODE CRIM. PROC. ANN. art. 44.01(b). Therefore, the State may only appeal
> this case if the trial court's order granting appellee shock community supervision is
> an illegal sentence.

*Id.* at 357. It concluded, correctly, that community supervision is not a sentence or even part of a

sentence. *Id.* at 358 (quoting *Ex parte Williams*, 65 S.W.3d 656, 657 (Tex. Crim. App. 2001)).

Therefore, it concluded, Article 44.01(b) did not authorize the State to appeal the trial court's order

4

granting the motion for shock community supervision. The *Ramirez* court concluded it was without jurisdiction to hear the appeal and dismissed it for want of jurisdiction. 62 S.W.3d at 358.

The Corpus Christi court again addressed the State's authority to appeal an order granting shock community supervision in *In re State ex rel. De Leon*, 89 S.W.3d 195 (Tex. App.—Corpus Christi 2002, orig. proceeding). The *De Leon* court acknowledged its previous holding in *Ramirez*, but explained that the State only advanced the "illegal sentence" provision of Article 44.01(b) as a basis for its authority to appeal. Again, at issue in *De Leon* was the substantive question before us: whether the trial court can order shock community supervision to a defendant who would not be eligible for initial judge-ordered community supervision because Section 3g limited the trial court's authority to so grant. *See id.* at 196.

Once again, the Corpus Christi court did not address this substantive question. *See id.* The State had sought mandamus relief, requesting that the court direct the trial court to vacate its order granting the motion for shock community supervision since the trial court did not have the authority to order community supervision under the circumstances in *De Leon*. *Id.* at 195–96. The Corpus Christi court concluded that the State *could* have appealed the order granting the defendant's motion for shock community supervision under Article 44.01's provision relating to the arrest or modification of a judgment. *See id.* at 196. Since the State had an adequate remedy at law, the court denied mandamus relief. *See id.* at 197.

5

The Beaumont court concluded that the State was authorized to appeal such an order in *State v. Dunbar*, 269 S.W.3d 693 (Tex. App.—Beaumont 2008, pet. granted).[1] Citing and siding with the Corpus Christi court's position in *De Leon*, the Beaumont court concluded the State had the right to appeal a trial court's order granting a motion for shock community supervision: "Because a community supervision order arrests or modifies a judgment, Article 44.01(a)(2) authorizes the State to appeal a shock community supervision order." *Id.* at 695. We agree with the Beaumont court's reading of Article 44.01(a)(2).

After reading *Ramirez*, *De Leon*, and *Dunbar* in conjunction with Article 44.01, we conclude that the State possesses the right to appeal the trial court's order granting shock community supervision in this case pursuant to Article 44.01(a)(2), relating to the arrest or modification of judgment. Having determined that the State does have the ability to appeal and we, therefore, have jurisdiction to review this order, we move to the next question: whether the State is correct in that the trial court did not have the authority to grant shock community supervision when an affirmative deadly weapon finding rendered Posey ineligible for judge-ordered initial community supervision. That is, if the trial court was without authority to grant Posey community supervision originally (in

[1]We note that on March 11, 2009, the Texas Court of Criminal Appeals granted a petition on the following issue in *Dunbar*: "Did the Court of Appeals err in holding that the State did not waive their right to appeal by not objecting to the trial court placing the petitioner on community supervision at the time the court ordered shock community supervision?" *State v. Dunbar*, No. PD-1713-08, 2009 Tex. Crim. App. LEXIS 361 (Tex. Crim. App. Mar. 11, 2009). The State is in no danger here of having waived any error associated with ordering shock community supervision; it made an extensive, cogent argument that the trial court could not grant shock community supervision here and noted that it would be appealing the decision.

6

light of the affirmative deadly weapon finding), was the trial court authorized to order shock

community supervision after it revoked the initial jury-recommended community supervision and

sentenced Posey to confinement?

**B.      Trial Court's Authority to Order Shock Community Supervision**

**1.      Applicable law**

Section 6 of Article 42.12 governs shock community supervision:

**Continuing Court Jurisdiction in Felony Cases**

Sec. 6. (a)      For the purposes of this section, the jurisdiction of a court in which a sentence requiring imprisonment in the institutional division of the Texas Department of Criminal Justice is imposed by the judge of the court shall continue for 180 days from the date the execution of the sentence actually begins.  Before the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion, on the motion of the attorney representing the state, or on the written motion of the defendant, suspend further execution of the sentence and place the defendant on community supervision under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further imprisonment and:

(1)      *the defendant is otherwise eligible for community supervision under this article*; and

(2)      the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony.

(b)      When the defendant or the attorney representing the state files a written motion requesting suspension by the judge of further execution of the sentence and placement of the defendant on community supervision, and when requested to do so by the judge, the clerk of the court shall request a copy of the defendant's record while imprisoned from the institutional division of the Texas Department of Criminal Justice or, if the defendant is confined in county jail, from the sheriff.  Upon receipt of such request, the institutional division of the Texas

Department of Criminal Justice or the sheriff shall forward to the judge, as soon as possible, a full and complete copy of the defendant's record while imprisoned or confined. When the defendant files a written motion requesting suspension of further execution of the sentence and placement on community supervision, he shall immediately deliver or cause to be delivered a true and correct copy of the motion to the office of the attorney representing the state.

(c)     The judge may deny the motion without a hearing but may not grant the motion without holding a hearing and providing the attorney representing the state and the defendant the opportunity to present evidence on the motion.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6 (Vernon Supp. 2009) (emphasis added).

Section 3 of Article 42.12 gives fairly broad authority to the trial judge to order initial community supervision. Some of the authority which Section 3 giveth to the trial judge, Section 3g taketh away from the trial judge. The relevant limitation here is as follows:

**Limitation on Judge-Ordered Community Supervision**

Sec. 3g.     (a)     The provisions of Section 3 of this article do not apply:

. . . .

(2)     to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g (Vernon Supp. 2009). Sections 3 and 3g, then, are read in conjunction to arrive at the undisputed conclusion that the trial court may not order initial

8

community supervision upon a felony conviction in which there was an affirmative deadly-weapon finding. The question here is more specific: After jury-ordered community supervision is revoked, may the trial court order shock community supervision in light of (or despite) an affirmative finding that a deadly weapon was used in the commission of the offense?

> **2.      Plain meaning of the statute:  "otherwise eligible . . . under this article"**

This case turns on the interpretation and application of the following phrase found in Article 42.12, Section 6(a)(1):  "the defendant is otherwise eligible for community supervision under this article."  The Texas Government Code requires that the plain meaning of phrases within a statute be our guide in interpreting a statutory provision:  "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."  *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005).  Courts must also presume that the Legislature intended that effect be given to the entire statute.  TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005); *see Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008); *Ex parte Austin*, 746 S.W.2d 226, 236 (Tex. Crim. App. 1988) (Clinton, J., concurring).  Posey points out that Article 42.12 encompasses all kinds of community service; he then argues that if the Legislature would have intended that shock community supervision not be available to him in this situation, it would have referred specifically to eligibility under Sections 3 and 3g dealing specifically with judge-ordered initial community supervision.  Since it does not, he continues, reference to "under this article" should be read to mean "if Posey is eligible for *any* kind of community supervision" under any part of Article 42.12.  Posey

9

maintains that since he had been placed on community supervision originally, he was obviously eligible for community supervision.

Shock community supervision serves to "suspend *further* execution of the sentence," and jurisdiction to grant shock community supervision continues for 180 days *after* the date the execution of the sentence begins. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6(a) (emphasis added). These two facets indicate that shock community supervision is a consideration for the trial court in the period of time elapsing after a jury has been dismissed. They also suggest that eligibility for Section 6 (shock community supervision) does have a temporal consideration. That is, the individual must be eligible for community supervision *at that time*. Further, Section 6 refers specifically to the authority of "the judge of the court" to order shock community supervision, making it clear that only the judge—not the jury—can order shock community supervision. Nothing in Article 42.12 would suggest otherwise.

With these contextual notes in mind, we read "otherwise eligible" in Section 6 as requiring that a defendant must be "otherwise eligible" for judge-ordered community supervision at the time community supervision is considered, bringing us back to Sections 3 and 3g, dealing with judge-ordered community supervision. Under Section 3g, Posey (having been previously found to have committed an offense using a deadly weapon) is ineligible for judge-ordered community supervision. By referring to "this article," Section 6(a)(1) encompasses the entirety of Article 42.12, including the authority and limitations in place with respect to judge-ordered community supervision.

10

Posey also characterizes this as a matter of reinstating the jury-awarded community supervision. An attempt to do so confuses the differing types of community supervision. All types of community supervision within Article 42.12 are independent of one another in the sense that although a defendant may be eligible under the statute for one form of community supervision, he may be ineligible under another. *See Hudson v. State*, 772 S.W.2d 180, 181 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd)[2] (citing *State ex rel. Vance v. Hatten*, 600 S.W.2d 828 (Tex. Crim. App. 1980) (orig. proceeding)). Article 42.12 does not specifically address reinstatement of jury-ordered community supervision by a judge following revocation of that community supervision. Instead, its provisions create different types of community supervision. At the outset, Posey was properly placed on initial community supervision by the jury; the judge could not have done so because of the existence of the affirmative finding of a deadly weapon. That initial community supervision, however, was revoked in light of Posey's violations of the conditions of that jury-ordered community supervision. Shock community supervision is an entirely different beast, contemplating that a defendant spend some time in confinement, requiring certain findings by the trial court before it is ordered, and involving certain procedures that must be followed to bring the matter before the trial

---

[2]This fairly general proposition came up in a context different than the one at issue. Since, the *Hudson* court concluded, a person adjudged guilty of an offense can, in theory, be ineligible for "ordinary" judge-ordered community supervision, but could still be eligible for deferred adjudication community supervision under Article 42.12, the trial court had not misinformed the defendant by discussing possible eligibility for community supervision. 772 S.W.2d at 181.

11

court. After revocation and sentencing, Posey was subject to the rules and limitations applicable to shock community supervision, one of those limitations being that it can only be ordered by a judge.

The plain language of Article 42.12, Section 6, read in conjunction with the rest of "this article," supports the conclusion that the trial court lacked the authority to order shock community supervision here, when Posey was otherwise ineligible for judge-ordered community supervision. This conclusion is also supported by caselaw.

### 3. Cases concerning the trial court's authority to order shock community supervision

#### a. *State ex rel. Vance v. Hatten*

We have reviewed *Vance*, 600 S.W.2d at 828. Aspects of *Vance* could be read to support the conclusion that courts must maintain a definite distinction between the trial judge's authority to grant initial community supervision and authority to grant shock community supervision. *Id.* at 830. The former version of Article 42.12 (in effect when *Vance* was decided) specifically prohibited shock community supervision for a defendant convicted of criminal homicide, rape, or robbery. *Id.* at 829. The result of having specific limitations on the authority to impose shock community supervision had the odd effect of creating a situation in which a trial court could grant initial community supervision, but could not grant shock community supervision. *Id.* at 830.

Acknowledging that it might be better to allow the trial court to have the same authority with respect to both initial community supervision and shock community supervision, the Texas Court of Criminal Appeals ultimately rejected this reading in light of the plain meaning of the statute:

> Certainly, it may be argued that under the entire scheme of Article 42.12, supra, it is desirable that the trial court have the authority to grant "shock community supervision" in any case in which it had the authority to grant "initial" probation. However, this is not the language of the statute.

*Id.* So, under the former version of Article 42.12, the court read and maintained a distinction between the trial court's authority to grant initial or "regular" community supervision and its authority to grant shock community supervision. *See id.* However, the relevance of *Vance*'s specific holding to the instant case is minimal since Section 6 of the current Article 42.12 represents a significant and notable change from the version in effect at the time that *Vance* was decided. Gone are the specific limitations relating to the trial court's authority to grant shock community supervision. In lieu of the former wording is the phrase "otherwise eligible . . . under this article." *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6(a)(1).

Although the version of Article 42.12 studied in *Vance* was quite different than the current version by including separate, independent limitations on shock community supervision, we may still rely on *Vance* for more general propositions. One is the focus on the plain meaning of the statute:

> [T]he statute must be construed as it is written by the legislature; it cannot be added to by courts; nor is it the duty of the courts to supply omissions in a law or to question the wisdom thereof. The courts, having no legislative powers, may not enlarge or alter the plain meaning of statutory language. Wording in statutes is to be given its literal interpretation when that wording is clearly unambiguous.

*Id.* (citations omitted). Another important aspect of *Vance* is the notion that different types of community supervision should be kept as distinct ideas. Of course, this position becomes something

13

of a balancing act because, under the current version of Article 42.12, eligibility for shock community supervision makes reference to "otherwise eligible" under Article 42.12. We see how the Texas Court of Criminal Appeals deals with this specific language in *Austin*, 746 S.W.2d 226.

### b. *Ex parte Austin*

In *Austin*, the court granted habeas relief to a defendant after the State violated the plea agreement. *Id.* at 229. Austin had pleaded guilty to attempted murder pursuant to a plea bargain under which he was to be granted shock community supervision. *See id.* at 226–27. The agreement was approved by the trial court. *Id.* at 227. However, the parties discovered after he entered his plea that due to the affirmative finding in the judgment that Austin had used a deadly weapon in commission of his offense, he was ineligible for shock community supervision. *Id.* at 229. Because the State's part of the plea bargain could not therefore be performed, the Texas Court of Criminal Appeals ordered the conviction set aside and remanded the cause for a new trial. *Id.* at 229–30.

Noting that Article 42.12 underwent reorganization in 1985, the Texas Court of Criminal Appeals was faced with interpretation of the "otherwise eligible" language, which remains in the current version of Article 42.12. *Id.* at 228. Applying a legislative scheme similar to the current version of Article 42.12, the court concluded as follows:

> [U]pon the entry of an affirmative finding of a deadly weapon in the judgment the applicant was not eligible for "regular" probation by the trial court and the trial court was without "power" to grant the same. If applicant was not eligible for "regular" probation because of the affirmative finding, . . . then he was not eligible for shock probation . . . because he could be granted shock probation only if he was "otherwise eligible for probation under this article."

14

*Id.* at 229 (citations omitted). *Austin*, therefore, makes it clear that a defendant who, by application of Section 3g, is ineligible for judge-ordered community supervision is not "otherwise eligible" for shock community supervision.[3]

### c.   *State v. Dunbar*

Our sister court came to the same conclusion in *Dunbar*. Dunbar was originally placed on deferred adjudication community supervision by the trial court. *Dunbar*, 269 S.W.3d at 694. The State moved to adjudicate, and the trial court convicted Dunbar of indecency with a child by contact, an offense under Section 21.11(a)(1) of the Texas Penal Code, an offense listed under Section 3g of Article 42.12 which would render Dunbar ineligible for initial judge-ordered community supervision (as the affirmative deadly weapon finding does in the instant case). *Id.* The trial court imposed a

---

[3]Indeed, a number of state cases have cited *Austin* for the proposition that ineligiblity for judge-ordered initial community supervision equals ineligibility for shock community supervision. *Heath v. State*, 817 S.W.2d 335, 339 (Tex. Crim. App. 1991); *Rudnick v. State*, No. 03-02-00767-CR, 2003 Tex. App. LEXIS 7392 (Tex. App.—Austin Aug. 29, 2003, pet. ref'd) (mem. op., not designated for publication); *Bryant v. State*, 974 S.W.2d 395, 398 (Tex. App.—San Antonio 1998, pet. ref'd). At least one federal court has also done so:

> [Section] 3g of article 42.12 prohibits the imposition of judge-ordered community supervision based on the convicted offense. Austin was convicted of one of the offenses—aggravated robbery—for which community supervision is prohibited. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(F) (West 1998). Thus, in light of his ineligibility for community supervision, [the defendant] was also ineligible for "shock probation." *See Ex parte Austin*, 746 S.W.2d 226, 229 (Tex. Crim. App. 1988).

*Austin v. Cockrell*, No. 3:01-CV-2236-L, 2002 U.S. Dist. LEXIS 7558, at *10 n.7 (N.D. Tex. Apr. 26, 2002).

sentence of four years, but later granted Dunbar's motion for shock community supervision. *Id.* at 695.

The Beaumont court concluded that the trial court lacked the authority under Section 6 to order shock community supervision based on the limitations outlined in Section 3g:

> Here, the trial court's power to grant shock community supervision was not invoked because as a matter of law Dunbar was not eligible for judge-ordered community supervision after conviction and imposition of sentence for an offense under Section 21.11(a)(1) of the Penal Code. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(C).

> Under the express terms of Article 42.12, § 6(a), Dunbar was not eligible for judge-ordered community supervision on February 14, 2008. Therefore, Article 42.12, § 6(a) did not authorize the trial court to modify the judgment after it became final. We hold that the trial court lacked the authority to suspend the execution of the sentence and place Dunbar on shock community supervision.

*Id.* at 696.

Again, we note that the Texas Court of Criminal Appeals has agreed to review *Dunbar*, but its review is limited only to the waiver argument presented in that case. We also note some factual distinctions between the instant case and *Dunbar*. Dunbar was first placed on deferred adjudication community supervision; under deferred adjudication community service, he would not have yet been found guilty of any offense. When Dunbar was convicted upon the State's motion to adjudicate, she became ineligible for judge-ordered community supervision, either shock community supervision or otherwise. *See id.* at 696. A jury never recommended any type of community supervision in *Dunbar*, the only community supervision being judge-ordered. Nevertheless, Dunbar was properly

16

placed on deferred adjudication community supervision. The Beaumont court recognized that an entirely different set of criteria was at work when a different type of community supervision is considered. When those criteria set out in Section 6 came into play, she was ineligible for judge-ordered community supervision as a result of the nature of her conviction and the application of Section 3g.

So, even though some factual distinctions may be drawn, *Dunbar*'s reasoning is instructive. Here, Posey was properly placed on community supervision by the jury. When that community supervision was revoked and Posey was sentenced to imprisonment, different rules were in operation: those of Section 6 relating to shock community supervision. The plain meaning of Section 6 implies the application of Section 3g limitations on judge-ordered community supervision. The affirmative deadly-weapon finding rendered Posey ineligible for judge-ordered community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2).

We find guidance in *Austin* and *Dunbar* to conclude that as a result of the affirmative deadly-weapon finding, the trial judge did not have the authority to grant Posey's motion for shock community supervision. We sustain the State's point of error. Section 6 of Article 42.12 did not authorize the trial court to modify the judgment after it became final; the trial court lacked the authority to suspend further execution of the sentence by placing Posey on shock community supervision. Having concluded that the trial court was not authorized to suspend the sentence, we now continue to address issues concerning that sentence. More specifically, we must resolve a

17

conflict between the length of sentence orally pronounced and the differing length of sentence set out in the written judgment.

### C.      Sentencing Issue

At the hearing on the State's motion to revoke community supervision, it appears there existed an impression that the offense for which Posey was convicted was a state-jail felony when, in fact, the affirmative deadly-weapon finding raised the offense to a third-degree felony.  *See* TEX. PENAL CODE ANN. § 12.35(c)(1) (Vernon Supp. 2009), § 19.05(b) (Vernon 2003).  So, although some apparently believed the appropriate range of punishment was 180 days to two years, it was actually two to ten years.  *See* TEX. PENAL CODE ANN. §§ 12.34, 12.35 (Vernon Supp. 2009).

### 1.      Reporter's Record v. Clerk's Record

After having found the State's allegations in its motion to revoke community supervision to be true, the trial court orally pronounced a sentence of twenty-two months, expressly rejecting the two-year sentence assessed by the jury.  The original judgment of conviction indicates the correct punishment range of two to ten years, however, and the jury was charged on that range of punishment.  The written judgment revoking community supervision likewise shows a two-year sentence.  There is an obvious conflict between the sentence the trial court orally pronounced and the judgment it signed.

As a general rule, when the oral pronouncement of sentence and the written judgment differ, the oral pronouncement controls.  *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005);

18

*see also Ex parte Thompson*, 273 S.W.3d 177, 178 n.3 (Tex. Crim. App. 2008) (when oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls and written judgment can be corrected via nunc pro tunc). A nunc pro tunc judgment is appropriate to correct clerical errors in a judgment. A clerical error is one "in which no judicial reasoning contributed to [its] entry, and for some reason [was] not entered of record at the proper time." *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); *State v. Dudley*, 223 S.W.3d 717, 721–22 (Tex. App.—Tyler 2007, no pet.); *see also* TEX. R. APP. P. 23.1, 23.2. Nunc pro tunc orders are not appropriate to address "judicial errors," errors that are the product of judicial reasoning or determination.[4] *Bates*, 889 S.W.2d at 309; *Dudley*, 223 S.W.3d at 722.

### 2. Can the trial court do that?

If the trial court revokes community supervision, it may impose the sentence assessed at the punishment hearing or it may reduce the sentence that was suspended at the punishment hearing if it determines that to do so would serve the best interests of society and the defendant. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23 (Vernon Supp. 2009). However, the trial court is not authorized, in fact, is expressly directed not, to reduce the sentence below the minimum sentence available for the original offense:

---

[4]For this reason, it is likely that Posey would not be entitled to such relief at any rate since the error at issue appears to be more in the category of judicial error and, therefore, outside the purview of a nunc pro tunc order. *See Ex parte Rich*, 194 S.W.3d 508, 512 (Tex. Crim. App. 2006) ("The error that occurred in Applicant's sentencing was more than a clerical mistake that can be corrected by a *nunc pro tunc* motion and order because it resulted from judicial reasoning or determination.").

> If community supervision is revoked after a hearing under Section 21 of this article, the judge may proceed to dispose of the case as if there had been no community supervision, or if the judge determines that the best interests of society and the defendant would be served by a shorter term of confinement, reduce the term of confinement originally assessed to any term of confinement not less than the minimum prescribed for the offense of which the defendant was convicted.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a); *see Clapper v. State*, 562 S.W.2d 250, 252 (Tex. Crim. App. [Panel Op.] 1978) (concluding that trial court exceeded its authority by attempting to reduce appellant's punishment to a term less than the minimum prescribed for the offense and reforming sentence to show the term of imprisonment at five years as originally imposed and probated upon conviction). We reiterate that the original judgment of conviction in 2006 accurately reflected the proper classification of the offense and the proper range of punishment of two to ten years. Everything else in the clerk's record is consistent with this. It is only the trial court's oral pronouncement upon revocation that deviates from the two-year sentence originally imposed by the jury, a sentence which fits within the punishment range of the crime of which Posey was convicted. Since the twenty-two-month sentence that was orally pronounced fell below the minimum punishment for the third-degree felony offense of which Posey was found guilty, the trial court was not authorized to make such a reduction.

### 3. Is this an appeal of the twenty-two-month sentence?

Posey maintains that this issue should have been, but was not, raised in a separate appeal by the State. We note that this issue, unlike the shock community supervision issue above, does relate to an illegal sentence, and the State may have been authorized to appeal that sentence under Article

44.01(b). *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal."). Posey points out that the oral pronouncement of the twenty-two-month sentence was made on November 21, 2008, and the State is far outside the twenty-day window in which it could have filed a notice of appeal with respect to the sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(d). The Texas Court of Criminal Appeals declined to take a similar action in *Mizell*:

> Appellant therefore asks this Court to reimpose an illegal sentence--a sentence that has no legal effect--because the State failed to file a notice of appeal. This we cannot do. Appellant appealed his convictions and therefore the court of appeals had jurisdiction over the two cases. A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence.

119 S.W.3d at 806. As the Houston Fourteenth court explained, there is no authority that directs a court to reform a legal written judgment to reflect an illegal oral pronouncement. *See Tufele v. State*, 130 S.W.3d 267, 274 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

### 4. Variance between the oral pronouncement and written judgment

We arrive then at the facts that we have an oral pronouncement of an illegal sentence and a written judgment that reflects a punishment within the appropriate range. Application of the general rule would require that we direct the imposition of an illegal sentence, an act which the Texas Court of Criminal Appeals has refused to do. *See Mizell*, 119 S.W.3d at 806. We have taken that same stance and recognized this situation as one in which the general rule regarding oral pronouncement and written judgment does not apply. We will not direct the imposition of an illegal sentence. This

21

is not an issue proper for reformation but is, instead, a matter of a variance between the oral pronouncement and the written judgment. *See Ribelin v. State*, 1 S.W.3d 882, 885 (Tex. App.—Fort Worth 1999, pet. ref'd). We must determine whether the error was harmful. *See* TEX. R. APP. P. 44.2(b); *Ribelin*, 1 S.W.3d at 885. That is, we must determine whether the variance affected Posey's substantial rights.

Nothing in the record suggests that Posey pleaded true to the State's allegation based on an agreement that the two-year sentence originally imposed would be reduced to twenty-two months; his plea of true preceded the oral pronouncement by the trial judge. Further, the written judgment is within the legal range of punishment and the two-year sentence is, in fact, the absolute minimum term of imprisonment for a third-degree felony. Further, the Texas Code of Criminal Procedure provides that "[t]he sentence served shall be based on the information contained in the judgment." TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (Vernon 2006). We conclude that the variance between the unenforceable oral pronouncement and the written judgment did not affect Posey's substantial rights.

## III.    CONCLUSION

We conclude that the affirmative deadly-weapon finding rendered Posey not "otherwise eligible for community supervision under [Article 42.12]." *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 6(a)(1). In light of the deadly-weapon finding, Section 3g(a)(2) would have prevented the trial judge from ordering community supervision. Since Section 6(a)(1) refers to "this article," it

22

would encompass Section 3g(a)(2)'s limitation on judge-ordered community supervision.  The trial court, then, erred by concluding that Posey was "otherwise eligible" for community supervision under Article 42.12 and, therefore, should not have ordered shock community supervision.

As the written judgment stands, it reflects the proper sentence.  To the extent that Posey invites this Court to reform the written judgment to reflect the illegal orally-pronounced twenty-two-month sentence, we decline.  The trial court was not authorized to reduce the sentence to a term that fell below the applicable range of punishment.  We cannot and will not endorse the unenforceable oral pronouncement of an illegal sentence.  We vacate the trial court's order granting shock community supervision, reinstate the November 21, 2008, judgment revoking Posey's community supervision and sentencing him to two years' confinement, and remand the case to the trial court with specific instructions to carry out the two-year sentence reflected in the written judgment.


Bailey C. Moseley
Justice

Date Submitted:    September 16, 2009
Date Decided:      October 20, 2009

Publish

23