**The STATE of Texas**

v.

**Cody Joe POSEY, Appellee.**

**Nos. PD–0034–10, PD–0035–10.**

Court of Criminal Appeals of Texas.

Jan. 12, 2011.

James R. Rodgers, Paris, for Appellant.

Gary D. Young, County & Dist. Atty., Paris, Lisa C. McMinn, State's Atty., Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion for a unanimous Court.

A jury convicted appellee of two criminally negligent homicides, alleged in separate indictments. The jury found that the motor vehicle driven by appellee in the commission of these offenses was used or exhibited as a deadly weapon, assessed punishment at two years' imprisonment, and recommended that the sentences be probated. The trial court followed that recommendation and placed appellee on community supervision for five years for each conviction.[1] On November 21, 2008, facing motions to revoke community supervision in both cases, appellee plead "true" to violation allegations in each case. After an evidentiary hearing on the motions, the trial judge found that appellee had violated the terms of his community supervision and sentenced him to 22 months on each offense, with the sentences to run concurrently.[2] In his oral comments, the trial judge suggested that appellee's attorney should file a motion for shock probation after appellee had been in state jail for at least 75 days.

On January 7, 2009, appellee filed a "Motion to Impose Community Supervision," which contained both cause numbers, noting that it had been "less than 180 days subsequent to the date execution of sentence actually began." The trial court conducted a hearing on appellee's motion, and at its conclusion stated, "I am going to grant shock probation to Mr. Posey. I'm going to extend the period of his probation to seven years.... I will place Mr. Posey back on probation, but will increase the length of time of his probation to seven years."

After confirming to the district clerk that the ruling applied to both cases and acknowledging that the prosecutor intended to appeal the issue, the trial judge said that the sentence "was originally five years' probated and I'm going to raise it to ten years. So it will be ten years—that'll be two years in TDC, probated for ten." Appellee's attorney then stated, "Two, probated for ten[,]" to which the trial judge responded, "Yes." The written order granted appellee's Motion to Impose Community Supervision and ordered that: "1. The community supervision imposed in each case is hereby extended to five additional years; and 2. Cody Posey pursuant to the granting of this motion is hereby ordered released and placed on community supervision." The judgment of conviction

---

1. We note that in 1993, during the 73rd Legislative Session, the statutory term for probation was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *Ivey v. State*, 277 S.W.3d 43, 51 n. 48 (Tex.Crim.App.2009).

2. While the trial judge's oral pronouncement of sentence was 22 months on each offense to run concurrently, the written judgments reflect that punishment was assessed as confinement for two years in the institutional division of the Texas Department of Criminal Justice. The court of appeals addressed this inconsistency, but neither party sought review of that decision. *State v. Posey*, 300 S.W.3d 23, 32–35 (Tex.App.-Texarkana 2009).

in each case reflected that the sentence of confinement was suspended and that appellee was placed on community supervision for ten years.

The state appealed, claiming in a consolidated brief that the trial court had reversibly erred by modifying the judgments of both causes and suspending the execution of the sentences and placing appellee on shock community supervision. It argued that, because appellee was not eligible for judge-ordered community supervision, the trial court lacked the jurisdiction to grant shock community supervision, thus it asked the court of appeals to vacate the order placing appellee on community supervision and to reinstate of the judgments of conviction. The court of appeals agreed that the affirmative deadly-weapon finding rendered appellee ineligible for judge-ordered community supervision, which prevented the trial judge from ordering community supervision, and that the trial court had therefore erred by ordering shock community supervision. *State v. Posey,* 300 S.W.3d 23 (Tex.App.-Texarkana 2009), and *State v. Posey,* No. 06–09–00040–CR, 2009 WL 3348849 (Tex.App.-Texarkana, delivered October 20, 2009) (not designated for publication). The court of appeals reinstated the judgments revoking appellee's community supervision and remanded the cases to the trial court with specific instructions to carry out the two-year sentences. *Id.* We affirm the judgments of the court of appeals.

Appellee's sole ground for review asserts that

[t]he court of appeals erred in vacating the trial court's imposition of shock community supervision on the basis that a trial judge has no jurisdiction to grant shock probation when the Petitioner's underlying offense had involved a deadly weapon finding as the Petitioner had originally been placed on community supervision by a jury.

The state argues that the court of appeals correctly interpreted Article 42.12 by holding that appellee was not eligible for judge-ordered community supervision and was not "otherwise eligible" for shock probation because of the deadly-weapon findings. In support, the state cites our opinion in *State v. Dunbar,* 297 S.W.3d 777 (Tex. Crim.App.2009).

In *Dunbar,* we held that because Article 42.12, § 3g, stated that a person who had been convicted of indecency with a child is ineligible for regular community supervision and Article 42.12, § 6(a)(1), provided that a person who is ineligible for regular community supervision is also ineligible for shock community supervision, Dunbar, who was convicted of indecency with a child, was ineligible for shock community supervision. *Dunbar,* 297 S.W.3d at 780.[3] However, in the instant cases, appellee was eligible for, and in fact was placed on, regular community supervision. Pursuant to Article 42.12, § 4, when a jury recommends that its sentence of confinement be suspended, the trial judge shall suspend the sentence and place the defendant on community supervision. In these two cases, that is precisely what happened; appellee was initially placed on community supervision because he was eligible for jury-recommended supervision and the jury recommended it.

The state also cites *Ex parte Austin,* 746 S.W.2d 226 (Tex.Crim.App.1988), in which, pursuant to a plea agreement, the defendant plead guilty to attempted murder before the trial court, and the court made an

---

**3.** We also observe that Dunbar plead *nolo contendere* to the charge and that the trial court deferred adjudication of guilt and placed her on community supervision. *Id.* at 778.

affirmative finding of deadly weapon based on the use of a handgun. Pursuant to the plea agreement, Austin was granted shock probation by the trial court. We held that because of the deadly-weapon finding, Austin was not eligible for regular probation by the trial court and the trial court was without power to grant it; Austin could be granted shock probation only if he was otherwise eligible for probation under Article 42.12. But here, appellee was eligible for, and received, jury-recommended probation under Article 42.12.

The state also cites the court of appeals opinion, *State v. Lima*, 825 S.W.2d 733 (Tex.App.-Houston [14th Dist.] 1992, no pet.), which held that the trial court improperly granted shock probation to Lima because the offense of which he was convicted was specifically excluded from being considered for shock probation. However, the offense for which appellee was convicted in these two cases, criminally negligent homicide, is not excluded.

Appellee points out that Code of Criminal Procedure article 42.12, § 6, provides that shock probation may be granted if the defendant "is otherwise eligible for community supervision under this article." He notes that Article 42.12 contains provisions for eligibility for community supervision by a judge as well as by a jury. He argues that § 6 does not specify that shock probation can be granted only if the defendant was initially eligible for community supervision from a judge, but rather says merely that the defendant must be eligible for community supervision "under this article." He asserts that nothing in Article 42.12 makes him ineligible for shock probation because, under Article 42.12, he properly received community supervision for criminally negligent homicide from a jury, even with a deadly-weapon finding.

The issue before us is the interplay of Article 42.12, § 6(a)(1)'s "is otherwise eligible for community supervision under this article" between shock probation and the other forms of supervision. Because that phrase does not refer to a particular section of the article, the plain meaning is that it refers to the entirety of Article 42.12—which discusses several kinds of community supervision, including judge-ordered (§ 3), jury-recommended (§ 4), deferred-adjudication (§ 5)—unless using the plain meaning produces an absurd result or the language within the other sections of Article 42.12 narrows eligibility. We consider the availability and limitations of each type of supervision.

The phrase cannot include deferred adjudication, as it may be granted only when there has been no finding of guilt, a circumstance contrary to a verdict of guilty and assessment and execution of sentence. (§ 5(a): a judge may find that the evidence substantiates the defendant's guilt and defer further proceedings without a finding of guilt.)

Because the jury verdict included an affirmative finding of the use of a deadly weapon, the trial judge could not grant community supervision without a recommendation from the jury. (§ 3(g)(a)(2): "The provisions of Section 3 of this article do not apply: to a defendant when it is shown that a deadly weapon . . . was used or exhibited during commission of a felony offense or during immediate flight therefrom . . . .")

The jury could, and did, recommend community supervision, but the jury's recommendation extends only to regular probation. We conclude that that limitation exists because a grant of regular community supervision suspends the imposition of the assessed sentence, while shock probation suspends further execution of a sentence that the defendant had already be-

gun serving.[4] *O'Hara v. State*, 626 S.W.2d 32, 34–35 (Tex.Crim.App.1981). The trial judge's authority to order any form of community supervision arises from the jury's recommendation of regular community supervision and thus has the same limitations. We hold that a trial judge may not grant shock probation unless the defendant is eligible for judge-ordered community supervision.

The judgment of the court of appeals in each cause is affirmed.

KEASLER, J., filed a concurring opinion, in which HERVEY and COCHRAN, JJ. join.

KEASLER, J., filed a concurring opinion in which HERVEY and COCHRAN, JJ., joined.

For different reasons than those of the majority, I would hold that a defendant must be eligible for regular community supervision under Article 42.12, Section 3 to be eligible for shock community supervision under Article 42.12, Section 6. Because an affirmative deadly weapon finding renders a defendant ineligible for judge-ordered community supervision under Article 42.12, Section 3g, a defendant is therefore also ineligible for shock community supervision. I therefore join the ma-

jority in affirming the court of appeals's judgment.

We give effect to the plain meaning of a statute's text.[1] "Where the statute is clear and unambiguous, the Legislature must be understood to mean what is has expressed, and it is not for the courts to add or subtract from such a statute."[2] There is a key exception to the plain meaning rule— when the application of the plain language would lead to absurd results, that language should not be applied literally.[3]

Article 42.12, Texas Code of Criminal Procedure, governs all aspects of community supervision.[4] Section 2 defines community supervision as "the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by a court for a specific period...."[5] The imposition of community supervision suspends the execution of a sentence and is not a sentence itself.[6]

Section 3 addresses judge-ordered community supervision.[7] It allows a judge to suspend the imposition of a sentence after a conviction, guilty plea, or no contest plea.[8] Within Section 3, subsection 3g provides limitations on judge-ordered supervision.[9] Subsection 3g states that the provisions of Section 3 permitting judge-ordered community supervision do not apply:

---

4. If a jury recommends community supervision, the trial judge must grant it and will then set the terms and conditions of the supervision. TEX.CODE CRIM. PROC. art. 42.12, §§ 4, 11. Those conditions may include time spent in the county jail, TEX.CODE CRIM. PROC. art. § 12, but cannot include time spent in prison, which may be assessed only after revocation of the recommended community supervision, TEX.CODE CRIM. PROC. art. 42.12, § 23.

1. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

2. *Id.*

3. *Id.*

4. TEX.CODE CRIM. PROC. ANN. § 42.12 (Vernon 2003).

5. *Id.*

6. *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim. App.1999).

7. TEX.CODE CRIM. PROC. ANN. § 42.12 § 3.

8. TEX.CODE CRIM. PROC. ANN. § 42.12 § 3(a).

9. TEX.CODE CRIM. PROC. ANN. § 42.12 § 3g.

(1) to a defendant adjudged guilty under [certain enumerated offenses].

(2) to a defendant when it is shown that a deadly weapon ... was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court....[10]

Section 4 addresses jury-recommended community supervision.[11] It authorizes a jury to recommend that the judge suspend the imposition of a sentence of confinement and place the defendant on community supervision.[12] The judge must then follow the jury's recommendation.[13] Subsection 4(d) lists factors that render a defendant ineligible for jury-recommended community supervision, but does not include a deadly-weapon limitation under Section 3g.[14] Section 4(e) requires a defendant, before trial, to file "a written sworn motion with the judge that the defendant has not previously been convicted of a felony" to be eligible for jury-recommended community supervision.[15]

Finally, Section 6 is entitled "Continuing Court Jurisdiction in Felony Cases," which governs shock community supervision.[16] Section 6 authorizes a judge to suspend

further execution of a sentence of confinement once it has begun and place a defendant on community supervision.[17] The judge may grant shock community supervision only if: (1) the defendant is otherwise eligible for community supervision under this article [42.12]; and (2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony.[18] The judge may grant shock community supervision on his own motion, on the motion of the State's attorney, or on the written motion of the defendant.[19] The judge may order shock community supervision only within 180 days from the day the execution of the sentence of confinement begins.[20]

A Texas defendant has the right to have a jury assess punishment.[21] A jury found Cody Joe Posey guilty of criminally negligent homicide in two causes, both stemming from a fatal traffic accident. The jury further found that Posey used his vehicle as a deadly weapon during the accident. Posey elected to have the jury assess punishment, and the jury sentenced him to two years in prison, but recommended community supervision, which the judge imposed. The State later moved to revoke Posey's supervision and, after a hearing, the trial judge concluded that Posey had in fact violated the terms of his supervision. The judge then sentenced Posey to two years' confinement but noted that shock community supervision could be

10. *Id.*

11. Tex.Code Crim. Proc. Ann. § 42.12 § 4.

12. Tex.Code Crim. Proc. Ann. § 42.12 § 4(a).

13. Tex.Code Crim. Proc. Ann. § 42.12 § 4(d).

14. *Id.*

15. Tex.Code Crim. Proc. Ann. § 42.12 § 4(e).

16. Tex.Code Crim. Proc. Ann. § 42.12 § 6.

17. Tex.Code Crim. Proc. Ann. § 42.12 § 6(a).

18. Tex.Code Crim. Proc. Ann. § 42.12 § 6(a)(1)-(2).

19. Tex.Code Crim. Proc. Ann. § 42.12 § 6(b).

20. Tex.Code Crim. Proc. Ann. § 42.12 § 6(a).

21. *Ivey v. State,* 277 S.W.3d 43, 47 (Tex.Crim. App.2009).

appropriate later. Posey timely filed a motion for shock community supervision in both causes, which the trial judge granted after a hearing. The judge signed two separate orders, each granting shock community supervision.

According to a plain reading of the statutes at issue, Section 6(a)(1)'s requirement that a defendant "is otherwise eligible under this article" refers to Section 3, governing judge-ordered community supervision. Section 6 specifically refers to the trial "judge" and to the "suspension of further execution of the sentence." The Legislature has specifically excluded the jury from granting or recommending shock community supervision. Section 6 comes into play only after a defendant has begun to serve a sentence, even if it was originally assessed by a jury. It gives the judge some discretion—within 180 days of from the execution of the sentence—to determine whether shock community supervision is appropriate rather than the continuation of the executed sentence. When a defendant like Posey elected to have the jury assess punishment, the jury fulfilled its duty when it assessed punishment. Additionally, the use of the present tense "is" in Section 6 is of significance. The word "is" indicates that shock community supervision eligibility is determined at the time that Section 6 can be invoked.[22] Thus, the timing limitations in Section 6 establish that shock community supervision eligibility is determined under Section 3. The phrase "is otherwise eligible under [42.12]" in Section 6(a)(1), therefore, does not refer to the eligibility requirements for jury-recommended community supervision in Section 4.

Any argument that Section 6(a)(1) refers to Article 42.12 in its entirety is undermined by its inclusion of Section 5, which governs deferred adjudication community supervision. Section 6 cannot legitimately be read to include Section 5. Unlike Section 3 community supervision, no guilt has been assessed, nor sentence imposed, under Section 5 deferred adjudication community supervision. Section 6(a)'s shock community supervision expressly contemplates the suspension of an executed sentence.[23] Common sense therefore dictates that the phrase "eligibility for community supervision" in Section 6(a)(1) does not refer to being otherwise eligible for supervision under Section 5.

Additionally, Professors Dix and Dawson recognize that a redundancy with respect to the similar limitations outlined in Sections 6(a)(2) and Section 4(e) militate against reading Section 6(a)(1) to include jury-recommended community supervision:

> The legislature undoubtedly did not intend to include jury eligibility, because it added the independent requirement of eligibility that the defendant has never before been incarcerated in a penitentiary serving a sentence for a felony. That requirement would be redundant because a jury could never give community supervision to a defendant who had previously served a prison sentence.[24]

---

22. *See* Tex. Gov't Code Ann. § 311.012(a) ("Words in the present tense include the future tense."); *cf. Ex parte Noyola,* 215 S.W.3d 862, 867 (Tex.Crim.App.2007) ("By incorporating Section 508.149(a) by reference, Section 508.283(c) invokes the version of Section 508.149(a) in effect when the inmate's parole or mandatory supervision is revoked.").

23. *See* 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 39.63 (2d ed.2001) (observing that "the point in the process when shock community supervision becomes possible, the opportunity for deferred adjudication has long passed.").

24. *See id.*

Finally, holding that the initial selection between a bench or jury trial should determine a defendant's subsequent eligibility for shock community supervision would discourage plea bargaining and, consequently, pleas of guilty and no contest. Defendants who could be or are ineligible for community supervision under Section 3 may select a jury trial for the sole purpose of remaining eligible for shock community supervision.