**Trevion MASON, Appellant**

v.

**The STATE of Texas, Appellee**

NOS. 01-16-00980-CR, 01-16-00981-CR

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued June 29, 2017

Discretionary Review Refused
September 13, 2017

Mark Hochglaube, JPMorgan Chase Bank Building, 712 Main Street, Suite 2400, Houston, Texas 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Kimberly Aperauch Stelter, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

1. Trial court cause no. 1450536

2. Trial court cause nos. 1450537 and 1489379

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

## OPINION

Sherry Radack, Chief Justice

Appellant Trevion Mason and several other defendants were arrested during a sting operation, accused of participating in a scheme to steal multiple kilos of cocaine. Appellant was indicted on four charges, i.e., possession with intent to deliver over 400 grams of cocaine,[1] two counts of engaging in organized criminal conduct,[2] and assault of a public servant.[3] He pleaded guilty to possession with intent to deliver and engaging in organized criminal activity, and he was sentenced to 20 years' confinement.

Appellant challenges the voluntariness of his plea based on allegedly incorrect admonishments about the availability of probation. We affirm.

### A. Appellant Formally Rejects Plea-Bargain Offers and Proceeds to Trial

On May 16, 2016, the trial court called appellant to trial on all four charged counts. Before the jury was brought in to the courtroom, appellant confirmed on the record that his attorney had conveyed to him the State's plea-bargain offers and that appellant rejected the offers. When queried, appellant described for the court the State's offers he was rejecting: "One was 35 years, and the last one was a PSI."

The State then announced ready and its intention to proceed at trial on only one of appellant's charges, i.e., engaging in orga-

3. Trial court cause no. 1474129

nized criminal activity.[4] The court then explained to appellant that—with enhancement allegations and a prior conviction—the charge carried a sentence range of "15 years up to life":

> Q. All right. On 1489379, that's an engaging, it's a first degree felony as alleged, there's a deadly weapon allegation, and then there's a prior conviction. It's alleged, Mr. Mason, that you were convicted in the 263rd of assault family violence back in 2011 on Cause No. 1299268. With that enhancement your range of punishment, if they're able to prove it and you're found guilty, your range of punishment would be a minimum of 15 years up to life in prison. Is that what you understand?
>
> A. Yes, ma'am.

Appellant then confirmed, again, that he was rejecting the State's 35-year offer. But appellant told the court that the State had not previously told him that it was proceeding to trial on only one charge: "I thought they was going to proceed on four cases, that's why I didn't accept the PSI."

The State clarified that, under its "PSI offer," the State would dismiss the assault-on-a-public-servant charge and one of the original engaging-in-organized-criminal-activity charges. Appellant would then be required to plead guilty to both the remaining engaging-in-organized-criminal-activity count and the charge of possession with intent to deliver a controlled substance over 400 grams. This was the same offer that had been made to appellant's co-defendants, and accepted.

Appellant stated again that he was rejecting the State's offer. The court called a break for appellant to get ready for trial and for the court to seat the jury.

**B. Appellant Changes his Mind and Accepts State's Offer**

When the proceedings were back on the record, a plea agreement had been reached. The record picks back up with the court stating that the proceedings were on the record to reflect that the State was proceeding on two cases against appellant, (1) possession with intent to deliver and (2) engaging in organized criminal activity. Because both charges were accompanied by an enhancement paragraph, appellant was asked whether he would plead true to a prior conviction on a 2011 charge of "assault—family violence." Appellant confirmed the prior conviction, pleading true.

**C. Written Plea and Admonishments**

During the break, appellant had signed two sets of documents related to his guilty plea on the two charges. Among other things, each packet contained a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," and a written admonishment of appellant's rights.

The written admonishment on the engaging-in-organized-criminal-activity specified that "the punishment range is confinement in prison for 15 years to life and a fine of up to $10,000." The written admonishment on the possession-with-intent-to-deliver charge specified that "the punishment range is confinement in prison for 15 to 99 years or life and a mandatory fine of up to $250,000."

The written admonishments in both cases state:

> The only type of community supervision that the court can give you is deferred adjudication. Shock probation and regular community supervision are not available.
>
> If you are placed on community supervision, the Court will determine the condi-

---

4. Trial court cause no. 1489379

tions of that supervision. The conditions may include your incarceration for a significant period of time.

### D. The Court's Admonishments and Appellant's Guilty Pleas in Open Court

The court verbally explained to appellant the potential sentencing range he faced, and appellant entered guilty pleas to both charges:

THE COURT: With those enhancements on each of those cases, sir, the range of punishment you face on your possession with intent to deliver along with your engaging is a minimum of 15 years up to life in prison. You understand that's the range of punishment you're facing on both cases?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. How, sir, do you plead to the offense of possession with intent to deliver a controlled substance, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And how is it, sir, that you plead to the offense of engaging in organized criminal activity, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And are you pleading guilty on both of those cases, Mr. Mason, because you committed the offense and for no other reason?

THE DEFENDANT: Yes, ma'am.

. . . .

THE COURT: Now, I have that you're before the Court without an agreed recommendation. What that means is that the State has to be willing to waive and give up their right to a jury trial and you have to understand that your right of appeal is severely limited. You understand your right of appeal is severely limited?

THE DEFENDANT: Yes, ma'am.

THE COURT: And, State, are you willing to waive and give up your right to jury trials on both of these cases?

MR. OVERHULS: Yes, your Honor.

. . . .

THE COURT: All right. Now, Mr. Mason, my paperwork indicates that you are proceeding to the Court on an open plea, that is without an agreed recommendation, though a pre-sentence investigation is going to be prepared. Is that your understanding?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone made you any promise about what this Court will do in terms of sentencing?

THE DEFENDANT: No, ma'am.

THE COURT: You understand I have that range of punishment we discussed at the beginning, that is where the minimum's 15 up to life in prison?

THE DEFENDANT: And probation, right?

THE COURT: Probation is a possibility, yes, sir.

THE DEFENDANT: Yes, ma'am.

THE COURT: So I could give you probation, but has anybody promised you that I would give probation?

THE DEFENDANT: No, ma'am.

### E. The Sentencing and Judgment

Separate PSIs were prepared for appellant and three of his co-defendants. The four were sentenced at a later hearing, with appellant receiving a 20-year sentence, another defendant receiving a 30-year sentence, and the remaining two defendants each receiving 40-year sentences.

### ISSUE ON APPEAL

In a single issue, appellant argues:

"The trial court admonished appellant of the incorrect punishment range rendering his plea involuntary."

## STANDARD OF REVIEW

■ A defendant's decision to enter a guilty plea and forgo a jury trial is afforded constitutional protections, including a requirement that the plea result from a voluntary and knowing relinquishment of a known right. *Hampton v. State*, 435 S.W.3d 303, 306 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)).

The admonishment that must be given defendants before a trial court accepts a guilty plea is governed by statute:

**Art. 26.13. Plea of guilty**

(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:

(1) the range of the punishment attached to the offense;

. . . .

(c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

(d) The court may make the admonitions required by this article either orally or in writing. If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea. If the defendant is unable or refuses to sign the statement, the court shall make the admonitions orally.

TEX. CRIM. PROC. CODE ANN. art. 26.13 (West 2009).

■ The "range of punishment" for purposes of article 26.13 does not include probation, and there is no mandatory duty for the trial court to admonish a defendant as to his eligibility for probation. *See Harrison v. State*, 688 S.W.2d 497, 499 (Tex. Crim. App. 1985). If, however, the trial court volunteers an admonishment as to the availability of probation, it must accurately admonish the defendant. *Tabora v. State*, 14 S.W.3d 332, 334 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

■ When the record reveals that statutory admonishments were given, it constitutes a prima facie showing that the defendant knowingly and voluntarily pleaded guilty. *Hampton*, 435 S.W.3d at 306 (citing TEX. CRIM. PROC. CODE ANN. art. 26.13; *Harrison*, 688 S.W.2d at 499). A defendant who attests that he understands the nature of his plea and that his plea was voluntary carries a "heavy burden" on appeal to show that his plea was involuntary. *See Edwards v. State*, 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.). To meet that burden, the defendant must affirmatively show that he was not aware of the consequences of his plea and that he was misled or harmed by the trial court's erroneous admonishment. TEX. CRIM. PROC. CODE ANN. art. 26.13(c); *Richard v. State*, 788 S.W.2d 917, 919–20 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Harm can be established if the record supports a conclusion that the defendant would not have pleaded guilty had he known the actual range of punishment. *See, e.g., In re T.W.C.*, 258 S.W.3d 218, 222–23 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (concluding plea was involuntary because defendant was given incorrect punishment range of up to 40 years when applicable maximum sentence was 20 years and defendant later testified that he

pleaded guilty based on incorrectly stated range).

## ANALYSIS

■ Appellant acknowledges that he was admonished correctly about the range of punishment, both in the written admonishments he signed and verbally by the court. He asserts, however, that the trial court's statement that it could sentence him to probation was an incorrect admonishment about his potential punishment range. Additionally, he contends he was misled and harmed by the admonishment, entitling him to a new trial.

The State responds that the trial court's admonishments were substantially correct, and that, in any event, appellant cannot show he was misled or harmed. We agree with the State.

As the State notes, appellant signed the trial court's written admonishments and pleaded guilty both in writing and in open court *before* the trial court's verbal affirmation that "probation is a possibility." Appellant represented that he had gone over all the papers he signed with his lawyer (including the written admonishments), and that he understood the documents.

"Community supervision" is statutorily defined as encompassing both deferred adjudication and probation:

"Community supervision" means the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which:

(A) criminal proceedings are deferred without an adjudication of guilt; or

(B) a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated

and the imposition of sentence is suspended in whole or in part.

TEX. CRIM. PROC. CODE ANN. art. 42.12 § 2(A)&(B) (West 2006); *see State v. Posey*, 300 S.W.3d 23, 29 (Tex. App.—Texarkana 2009), ("All types of community supervision within Article 42.12 are independent of one another in the sense that although a defendant may be eligible under the statute for one form of community supervision, he may be ineligible under another."), *aff'd*, 330 S.W.3d 311 (Tex. Crim. App. 2011).

The court's written admonishments correctly informed appellant that the only type of community supervision available to him was "deferred adjudication." The State alleges that the verbal use of the word "probation" rather than the phrase "deferred adjudication" was not erroneous or harmful, in light of the prior written admonishments appellant had received explaining the options in detail. We agree, especially given that the phrases are often used interchangeably to describe situations in which a defendant is under supervision of a court and subject to conditions in lieu of incarceration. *E.g.*, *Steadman v. State*, 31 S.W.3d 738, 741 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (discussing "punishment hearing at which the Court gave [defendant] *deferred adjudication probation*" (emphasis added)); *Graves v. State*, 803 S.W.2d 342, 344 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) ("Although probation during deferred adjudication of guilt is distinguished in several respects from ordinary probation, the fact remains that it is a sub-species of probation."); *Hudson v. State*, 772 S.W.2d 180, 181 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) ("Although probation during deferment of adjudication of guilt is different in certain respects from ordinary probation, it is still a type of probation.").

Accordingly, we conclude that appellant has not demonstrated that the trial court's verbal admonishment that he was eligible for probation (for which he was not eligible) rather than deferred adjudication (for which he was eligible), was misleading or harmful. *E.g.*, *Garcia v. State*, 02-15-00442-CR, 2017 WL 1536211, at *4 (Tex. App.—Fort Worth Apr. 27, 2017, no. pet. h.) (mem. op.; not designated for publication) (trial court's admonishment that defendant was eligible for probation was not misleading or harmful because, while court "could not grant 'straight' or regular probation," it could "place him on deferred adjudication probation"); *Hudson*, 772 S.W.2d at 181–82 (holding that trial court did not mislead defendant by admonishing him regarding his eligibility for probation when defendant was not entitled to "regular" court-ordered probation, but was eligible for deferred adjudication probation); *Garza v. State*, 14-06-00747-CR, 2008 WL 596225, at *2 (Tex. App.—Houston [14th Dist.] Mar. 6, 2008, pet. ref'd) (mem. op.; not designated for publication) ("[D]eferred adjudication is a type of probation, and appellant was eligible for deferred adjudication until the point the trial court adjudged him guilty. Consequently, the trial court's admonishment that it "could give [appellant] probation or deferred adjudication" was not "misleading.");

We overrule appellant's sole issue.

### CONCLUSION

We affirm the trial court's judgments.

