**Opinion issued December 1, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00504-CR

———————————

**ETHER LAVER THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 15-DCR-070852

# O P I N I O N

Appellant, Ether Laver Thomas, pleaded guilty to one count of first-degree theft and one count of first-degree money laundering without an agreed punishment recommendation. After a hearing, the trial court sentenced appellant to 28 years' confinement. In a single issue with two subparts, appellant contends that (1) she did

not validly waive her right of appeal and, therefore, this Court has jurisdiction over this appeal, and (2) her guilty plea was not knowing or voluntary because she pleaded guilty without a sentencing recommendation on the poor advice of counsel and received a harsher sentence than she expected. The State responds that appellant's guilty plea was entered into knowingly and voluntarily and that we should dismiss this appeal because appellant validly waived her right of appeal. The State also argues that appellant waived error by presenting an improper multifarious issue that combines whether she waived her right to appeal with a claim that her guilty plea was involuntary due to ineffective assistance of counsel, and thus appellant inadequately briefed her issue so that it presents nothing for review.

We affirm.

## Background

In September 2015, appellant was indicted for one count of theft of $200,000 or more and one count of money laundering of $200,000 or more, each a first-degree felony offense at the time,[1] "pursuant to one scheme and continuing course of

---

[1]     At the time of the offenses, the Penal Code classified both theft and money laundering as first-degree felony offenses if the value of the property stolen or value of the funds laundered was $200,000 or more. Act of Sept. 1, 1994, 73d Leg., R.S., ch. 900, § 1.01, sec. 31.03, 1993 Tex. Gen. Laws 3586, 3638 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(7) (requiring $300,000 or more in property stolen to constitute first-degree felony)); Act of Sept. 1, 2005, 79th Leg., R.S., ch. 1162, § 2, sec. 34.02, 2005 Tex. Gen. Laws 3802, 3803 (amended 2015) (current version at TEX. PENAL CODE ANN. § 34.02(e)(4) (requiring $300,000 or more in funds laundered to constitute first-degree felony)).

conduct" between 2007 and 2014. Appellant and six co-conspirators were accused of stealing more than $8 million from an engineering company at which one of the co-conspirators, Andrea Davidson, was employed as an accountant. In June 2017, the State filed a disclosure in this case stating that Davidson had been found guilty in February 2017 of first-degree theft of more than $200,000 "for similar acts committed during the timeframe for which [appellant] [was] indicted" and received a twenty-eight-year prison sentence. The disclosure stated, "Davidson admitted to committing the offense and implicated [appellant]."

In November 2017, appellant pleaded guilty to both offenses. She signed and initialed next to each paragraph of a written guilty plea, which included the trial court's written admonishments, her waiver of certain statutory and constitutional rights, stipulations, and a judicial confession. Appellant was admonished that she was charged with two-first degree felony offenses for theft and money laundering with a punishment range of "5 to 99 years or life and up to a $10,000 fine." She was also admonished that the State's punishment recommendation, if any, was not binding on the court and that if the court's punishment did not exceed the State's recommendation agreed to by appellant, then appellant could appeal only with the court's permission.

Appellant waived certain statutory and constitutional rights, including the right to trial by jury, and she "request[ed] the consent and approval of the [trial court]

3

and the attorney for the State to such waiver." Appellant stipulated that she entered her guilty plea to the two offenses voluntarily after fully consulting with her attorney and having been satisfied that her attorney properly represented her. In a section regarding a punishment recommendation by the State, the stipulation stated, "[The] State will waive its right to a jury trial. This is an 'open' plea without a recommendation." After appellant signed her guilty plea, her trial counsel also signed, certifying that she had consulted with appellant and advised appellant of her rights; that appellant was mentally competent, fully understood the trial court's admonishments, and was fully aware of the consequences of her written guilty plea; and that trial counsel "believe[d] this document [the guilty plea] was knowingly and voluntarily executed by [appellant]." Finally, the attorney for the State also signed appellant's guilty plea, certifying the State's consent to and approval of "[appellant's] waiver of trial by jury and the stipulations contained in this document." Appellant's guilty plea expressly waived her right to a jury trial, but it did not state that it waived appellant's right to appeal.

In addition to her written guilty plea, however, appellant signed a separate document, entitled "Defendant's Waiver of Right to Appeal – Guilt Innocence only." In this document, appellant acknowledged:

> that if the punishment assessed by [the trial court] does not exceed the
> punishment recommended by the State and agreed to by [appellant] and
> [appellant's] attorney, [appellant] must have the permission of [the trial

4

court] before [she] may prosecute an appeal on any matter in this case, except for those matters raised by written motions prior to trial.

Appellant "voluntarily waive[d] [her] right to file a Motion for New Trial, a Motion in Arrest of Judgment, a Notice of Appeal, or any right to appeal that [she] may have in this cause of action."

Neither appellant's written guilty plea nor her appeal waiver confirmed that the State would recommend a punishment or stated what the recommendation would be. Necessarily, neither included an agreement between the State and appellant and her counsel as to what her punishment should be.

After accepting appellant's guilty plea, the trial court issued a certificate of appellant's right of appeal. *See* TEX. R. APP. P. 25.2(a)(2) ("The trial court shall enter a certificate of the defendant's right of appeal each time it enters a judgment of guilt . . . ."). The certificate checked two boxes, certifying both that appellant's case "is a plea-bargain case, and the defendant has no right of appeal . . . as to guilt/innocence" and that "the defendant has waived the right of appeal as to guilt/innocence." This certificate of appellant's right of appeal as to guilt/innocence did not say anything about appellant's having waived the right to appeal the *sentence* rendered by the trial court.

At appellant's plea hearing on November 17, 2017, the State offered into evidence, without objection from appellant, appellant's written guilty plea, including the written admonishments, waiver of rights, and stipulations and judicial

5

confession; the trial court's order accepting appellant's guilty plea; the trial court's certification of appellant's right of appeal; and appellant's written waiver of her right to appeal her sentence if not greater than the State's recommendation. And, where the printed form stated that "the attorney for the State will recommend to the Court that my punishment be assessed at the following," was a handwritten insertion stating, "State will waive its right to a jury trial. This is an 'open' plea without a recommendation." The State also offered into evidence forty exhibits, consisting primarily of banking records, without objection from appellant.

Appellant testified that she understood she was charged with two first-degree felony offenses with a punishment range from five to ninety-nine years or life in prison and a fine up to $10,000. Appellant pleaded guilty to both offenses during the following colloquy:

[Trial Court]: And are you pleading guilty freely and voluntarily?

[Appellant]: Yes.

[Trial Court]: In other words, no one is forcing you to make this plea?

[Appellant]: Correct.

[Trial Court]: And I understand that there's no plea agreement at this time, and you're going to be coming to the Court for punishment. And that's what you're asking, correct?

[Appellant]: Yes.

. . . .

6

[Trial Court]: And, ma'am, you also understand that you have the right to have a jury trial?

[Appellant]: Yes.

[Trial Court]: And are you giving up or waiving your right to that jury trial?

[Appellant]: Yes.

[Trial Court]: And if your case were tried to a jury, you would also have the right to an appeal. Do you understand that?

[Appellant]: Yes.

[Trial Court]: And are you also waiving your right to that appeal?

[Appellant]: Yes.

[Trial Court]: Very well. At this time, I'm going to withhold a finding of guilt on your part. We're going to reset your case for what we call a sentencing hearing.

The trial court's order accepting appellant's guilty plea stated that appellant was mentally competent and was "represented by competent and effective counsel," that she received and fully understood the court's admonishments, and that she voluntarily and knowingly executed a waiver of her right to a jury trial after the court admonished her of the consequences of her plea. The order did not mention an appeal waiver.

In March 2018, the trial court held a sentencing hearing. The State presented two witnesses. The first witness was the complainant, Dr. Manmohan Kalsi, who testified that he had owned Kalsi Engineering, an engineering company, since 1978,

7

and that he hired Davidson as an accountant in 2002. Davidson would invite many other people, including appellant, to her office at Kalsi Engineering, and Dr. Kalsi testified that he would welcome them, so he had met appellant and had seen her at least twice a year while Davidson worked for him from 2002 to 2014. Appellant was never, however, employed by Kalsi Engineering or by Dr. Kalsi. The trial court admitted into evidence a summary of financial records showing that appellant, Davidson, and their co-conspirators stole nearly $8.5 million from Kalsi Engineering between 2007 and 2014 and that more than $3 million was stolen by appellant alone.

The State's second witness, M. Cardenas, an investigator in the Economic Crimes Division of the Fort Bend County District Attorney's Office, had prepared summaries of appellant's and Davidson's banking records, which the trial court admitted into evidence. Cardenas testified about his review of the voluminous financial records dating from 2007 to 2014, during which time about $3 million was deposited into appellant's bank account and, of that amount, appellant returned approximately $250,000 to Davidson. During that time, appellant withdrew approximately $1.2 million in cash and spent nearly $900,000 on food, luxury items, casinos, travel and hotels, salons, and clothing stores.

After the State rested, appellant called six witnesses. C. Garza, who was employed by the Fort Bend County Community Supervision and Corrections Department, testified about the risk assessment and presentence investigation report

8

that he had completed for appellant, which stated that appellant had been charged with felony theft and sentenced to five years' community supervision in 1982. Appellant was also convicted of welfare fraud and sentenced to six years' community supervision in 1997. Appellant's remaining witnesses, including her employer, pastor, son, and nephew, testified on her behalf.

In closing, the State argued that "Davidson took four and a half million. [Appellant], in her own account, the account that she held on her own, $3 million," and stated, "you're aware of what happened in Andrea Davidson's case, and I think the two of them, because they worked together in this crime, should share in that punishment." It argued, "So, my recommendation to the Court, if the Court would consider it, is to match their sentences[.]" As stated above, the State's pretrial disclosure showed that Davidson had been found guilty of first-degree theft in February 2017 and sentenced to twenty-eight years in prison. In her closing, appellant's counsel attempted to distinguish appellant's case from that of Davidson by referring to Davidson as "the mastermind in this case," and defense counsel urged the court to sentence appellant to community supervision.

After a brief recess to take the case under advisement, the trial court sentenced appellant to twenty-eight years' confinement, the amount for which the State had

argued at the hearing.[2] The trial court told appellant, "[I]t seems like you lived a double life, one where you're a wonderful person at home with your family," but the court could not "ignore the fact that [appellant] [was at the time] in [her] fifties, and [she] [hadn't] learned a lesson. . . . [Appellant had] been through the court system twice, and now here [she] [was] a third time." The trial court's judgment stated that appellant and the State agreed to waive a jury trial, that the trial court consented to the waiver, and that appellant entered a plea of guilty for the two offenses. The judgment did not state that appellant had waived her right to appeal.

The trial court's certification of appellant's right of appeal provided that appellant had waived the right to appeal with a handwritten notation indicating that she had waived her right to appeal "as to guilt/innocence."

Appellant filed a motion for new trial, generally arguing that "the sentence imposed was cruel and unusual, disproportionate and excessive, in violation of" the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Texas Constitution. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13. The trial

---

[2]     Appellant states on appeal that the trial court also assessed "restitution in the amount of $8,472,754.15," which the State does not dispute, referring in its brief on appeal to "the amount of restitution owed," but there is no evidence in the record on appeal that the trial court assessed restitution against appellant. Although the appellate record includes the State's motion to include restitution in the judgment, the record does not include an order on the motion, and the trial court's judgment, which is included in the record, states, "Total Amount of Restitution/Reparation: $0.00."

court did not rule on appellant's motion for new trial, and it was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c).

This appeal followed.[3] After the parties filed their briefs, we reviewed the record and determined that the trial court's certification of appellant's right to appeal, which stated both that this was a plea-bargain case and appellant had no right of appeal and that appellant had waived her right of appeal, appeared defective. *See Dears v. State*, 154 S.W.3d 610, 614 (Tex. Crim. App. 2005) ("[A]n appellate court has the ability to examine a [trial court's] certification [of an appellant's right of appeal] for defectiveness, and to use Rules 37.1 and 34.5(c) [of the Texas Rules of Appellate Procedure] to obtain another certification, whenever appropriate.").

We issued an order abating this appeal and remanding to the trial court for further proceedings, stating, "There is no indication in appellant's plea paperwork, elsewhere in the Clerk's Record, or anywhere in the Reporter's Record that [appellant's] waiver of her right to appeal was bargained for in exchange for the State's consent to her waiver of a jury trial." This was the only waiver referenced in the trial court's judgment and it described the waiver of the right to a jury trial as given in exchange for a guilty plea without such a trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (providing defendant may not unilaterally waive right to jury trial, but

---

3    On appeal, appellant has not raised any issue regarding the Eighth Amendment or Texas Constitution, and she has thus waived these issues.

11

trial court and State must consent); *Carson v. State*, 559 S.W.3d 489, 494–96 (Tex. Crim. App. 2018) (holding that record must show State consented to defendant's waiver of right to jury trial "in exchange for the defendant's waiver of his appeal" and that defendant's waiver "was made in exchange for consideration given by the State and, thus, was voluntary, knowing and intelligent"); *see also Dears*, 154 S.W.3d at 615 ("At the time of the appellate court's ruling in this case, it had before it the clerk's record, which reflected that Dears had a right to appeal. Therefore, the Court of Appeals was obligated to review that record in ascertaining whether the certifications were defective. The certifications state that these are plea bargain cases, but the record refutes this.").

We ordered the trial court to conduct a hearing with appellant, her counsel, and a representative of the State and, post hearing, to issue findings of facts and conclusions of law regarding whether the State's consent to appellant's jury-trial waiver was given as consideration for appellant's appeal waiver. *See* Tex. R. App. P. 37.1 (authorizing appellate court to make appropriate order to remedy defect in certification of appellant's right of appeal in criminal case), 34.5(c)(2) (authorizing supplementation of clerk's record if appellate court in criminal case orders trial court to prepare and file findings of fact and conclusions of law or certification of appellant's right of appeal). We also ordered the trial court, if necessary, to cure any defect by executing an amended certification of appellant's right to appeal.

At the hearing on remand, appellant was represented by her appellate counsel, D. Craig Hughes, who signed her appellate brief previously filed in this Court. Both appellant's trial counsel, Cheryl Coleman, and trial counsel for the State, Assistant District Attorney Abdul Farukhi, testified at the hearing. The court admitted into evidence appellant's written guilty plea and appeal waiver, as well as an affidavit from Coleman.

Farukhi testified that he recalled negotiating a guilty plea with Coleman, but that they could not agree on a sentencing recommendation. He could not recall any specific conversation with Coleman about waiving appellant's right of appeal. Farukhi admitted that he handwrote, in the section of appellant's plea paperwork about the State's punishment recommendation, that the "State will waive its right to a jury trial. This is an 'open' plea without a recommendation." Based on his review of his handwritten words in appellant's guilty plea, Farukhi testified that the State had consented to appellant's waiver of a jury trial in exchange for appellant's appeal waiver and that the State would not have consented to appellant's jury-trial waiver if appellant had not also waived her right of appeal. On cross-examination, Farukhi agreed that appellant's written guilty plea did not specifically say that the State waived its right to a jury trial in exchange for appellant's appeal waiver, and he conceded that he could have added it. He also agreed that he could have added language to the certificate of appellant's right to appeal showing the consideration

provided by the State in exchange for appellant's appeal waiver. He further agreed that the State received a benefit from appellant's plea of guilty to two serious felony offenses in exchange for her jury-trial waiver, although he maintained that appellant had bargained for her waiver of her right of appeal.

Coleman also testified at the hearing on remand. She denied discussing an appeal waiver with the State in appellant's case. Coleman asserted a claim of attorney-client privilege regarding her communications with appellant, prompting the trial court to ask Hughes, appellant's appellate counsel, if "there [has] been an ineffective assistance claim," to which Hughes answered "No." The trial court stated, "I don't believe that there is a writ or anything of that sort alleging ineffective assistance or anything accusatory that would invoke [attorney-client] privilege," to which Hughes responded, "There's not a writ[.]" The State, referring to appellant's brief on appeal, countered that appellant "does raise peripherally an ineffective assistance of counsel claim for poor attorney advice," to which Hughes responded, "I would say poor attorney advice does not rise to the level of an ineffective assistance of counsel." Appellant, who was present at the hearing, did not contravene her counsel or waive attorney-client privilege.

In closing, the State offered no argument but instead deferred to the trial court. After the hearing, appellant, through her appellate counsel, Hughes, filed proposed findings of fact and conclusions of law with the trial court, which the court adopted

14

in their entirety in a written order. The trial court's findings of fact and conclusions of law included the following:

**I.   Findings of Fact**

. . . .

3.    [The State] and [appellant's counsel] were unable to reach an agreement on a number of years to be reflected in an agreed sentence recommendation.

. . . .

5.    [The State] and [appellant's counsel] agreed that the judge in the trial court . . . would assess the punishment if [appellant] agreed to plead guilty.

. . . .

7.    State's Exhibit No. 1 does not specifically state that the State will waive its right to a jury trial in exchange for [appellant's] waiver of her right to appeal.

. . . .

10.   Mr. Farukhi admitted that with regard to [appellant's] waiver of her right to appeal in exchange for the State waiving a jury trial, such consideration would be expressly noted in the paperwork. However, he admitted[,] "There's no quid pro quo written in that way on [the] paperwork."

11.   The Court's Certification of Defendant's Right to an Appeal (State's Exhibit No. 2) provides that [appellant] has waived the right to appeal with the handwritten notation indicating that [appellant] has waived her right to appeal "as to guilt/innocence."

12.   There is no language provided or written into the subject Certification of Defendant's Right of Appeal concerning any exchange for the State's consent to [appellant's] waiver of her right to a jury trial.

. . . .

15. Assistant District Attorney Farukhi's testimony is undisputed that with respect to [appellant's] Waiver of Right to Appeal (Defendant's Exhibit No. 1), it provides no express and clear language of a quid pro quo expressly written in the document indicating that [appellant] waived her right to appeal in consideration for the State's consent to her jury waiver.

16. There was no direct evidence presented to the Court that [the State] and [appellant's counsel] ever engaged in a colloquy or conversation concerning [appellant's] right to appeal and the waiver thereof.

. . . .

18. There were no discussions between [appellant's counsel] and [the State] about consideration related to [appellant's] waiver of her right to appeal.

19. The Court's Certification of Defendant's Right to Appeal (State's Exhibit No. 2) indicates that "[appellant] has no right to appeal as to guilt or innocence."

20. [Appellant's counsel] had no discussion or conversation with [appellant] that she was waiving her right to appeal in exchange for anything being offered by the State.

. . . .

25. [Coleman's] affidavit provides that "I agree with the [Court of Appeals'] order of abatement [in this case], that the record and plea paperwork did not indicate that [appellant's] waiver of her right to appeal was bargained for, as there was no negotiation with the [State] regarding any consideration that was to be given by the State in exchange for such waiver."

26. [Coleman's] affidavit also provides that "After reviewing my notes and the documents referenced above, I can say pretty definitively that there was no negotiation whatsoever regarding

16

whether [appellant's] waiver was given in exchange for a waiver by the State."

27. [Coleman's] affidavit finally provides, "At the time, the State's waiver of a jury trial was given in consideration for [appellant's] agreement to plead guilty to two felony offenses, which is clearly supported by the record."

28. In the Written Stipulation and Judicial Confession, which is part of [appellant's] Plea of Guilty or Nolo Contendere, [appellant] initialed the statement that "the attorney for the State will recommend to the Court that my punishment be assessed at the following," next to which was handwritten in a blank space, "State will waive it[s] right to a jury trial. This is an 'open' plea without a recommendation," followed by the preprinted statement, "I agree and accept that recommendation and have entered into a plea-bargain agreement for such recommendation."

. . . .

30. In addition, [the trial court's] Judgment states, "it appearing to the Court that [appellant], her counsel, and the State's attorney have agreed in writing [in] open court to waive a jury in the trial of this cause and to submit this cause to the Court," and therefore found that "there was no plea-bargaining agreement between the [S]tate and [appellant]"; the Court made no reference to [appellant's] waiver of appeal.

**II. Conclusions of Law**

. . . .

33. There is no indication in [appellant's] plea paperwork or elsewhere in the Court's record that her waiver of her right to appeal was bargained for in exchange for the State's consent to her waiver of a jury trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 . . . .

34. [Appellant] did not agree upon, and the record does not demonstrate, that the State exchanged consideration for

17

[appellant's] waiver of her right to appeal, or as a part of an agreement that included that waiver, but exclusively for her agreement to plead guilty to two felony offenses. . . .

35. Given the facts and circumstances presented, [appellant] could not have effectively waived her right to appeal, as it was not voluntary, knowing and intelligent.

36. The record reflects that the State's waiver of a jury trial was given in consideration not for [appellant's] waiver of her right to appeal, or as part of an agreement that included that waiver, but exclusively for [appellant's] agreement to plead guilty to the two felony offenses of theft and money laundering.

37. In order for [appellant] to effectively waive her right to appeal, the State was required to give [appellant] some consideration for her foregoing that right.

38. There was no consideration exchanged for [appellant's] waiver of her right to appeal.

. . . .

40. [Appellant] did not waive her right to appeal.

41. The [trial court's] Certification of Defendant's Right of Appeal (State's Exhibit No. 2) is defective and inaccurate. . . . The defect and inaccuracies exist because [appellant's] sentencing was not agreed upon and, therefore, [appellant] could not effectively waive her right to appeal and the State gave her no consideration for that waiver. . . .

42. The [trial court] will prepare an amended trial court certification of [appellant's] right to appeal to correct inaccuracies, a defect or omissions, which will be submitted to the Court of Appeals for the First District of Texas, concluding that [appellant] does, in fact, have the right to appeal. TEX. R. APP. P. 25.2(f), 34.5(c), 37.1.

18

The trial court signed an amended certification of appellant's right to appeal, stating that this case "is not a plea-bargain case, and [appellant] has the right of appeal." After the trial court clerk supplemented the record on appeal with the transcript of the hearing, the trial court's order adopting appellant's proposed findings of fact and conclusions of law, the trial court's findings of fact and conclusions of law, and the amended certification of appellant's right of appeal, we reinstated this appeal. Appellant did not file a reply brief, and neither party filed supplemental briefing. *See* TEX. R. APP. P. 38.3, 38.7.

**Waiver of Right of Appeal**

We first address appellant's right to appeal, as this is a jurisdictional matter. The parties disagree whether appellant validly waived her right of appeal, which raises the Court's subject-matter jurisdiction to decide this appeal. *See Jones v. State*, 488 S.W.3d 801, 808 (Tex. Crim. App. 2016). In order for the Court to assert subject-matter jurisdiction over this appeal, the appeal must be authorized by law. *See Abbott v. State*, 271 S.W.3d 694, 696–97 (Tex. Crim. App. 2008) (citing TEX. CONST. art. V, § 6(a), TEX. CODE CRIM. PROC. ANN. art. 44.02, and TEX. R. APP. P. 25.2(a)(2)).

"Generally speaking, a criminal defendant has a statutory right to appeal." *Carson*, 559 S.W.3d at 492 (citing TEX. CODE CRIM. PROC. ANN. art. 44.02). "However, a defendant in a non-capital case may waive any rights secured to him by law." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 1.14(a)). A defendant's waiver

19

of the right to appeal must be made voluntarily, knowingly, and intelligently, and a valid waiver will prevent the defendant from appealing any issue unless the trial court consents to the appeal. *Id.* at 492–93 (citing *Monreal v. State*, 99 S.W.3d 615, 617 (Tex. Crim. App. 2003)). "[A] defendant may knowingly and intelligently waive his appeal as part of a plea when consideration is given by the State, even when sentencing is not agreed upon." *Id.* at 494 (citation omitted).

Appellant argues that she did not knowingly and voluntarily waive her right to appeal because the State had not recommended a punishment, so she did not know what sentence the trial court would impose on her when she executed the waiver. Appellant also argues that her appeal waiver was not knowing or voluntary because the State did not give her consideration for it. The State responds that it waived its right to a jury trial in exchange for appellant's ability to apply for deferred adjudication, which the State contends was "not available but for the State's waiver [of its right to a jury trial]." The State also argues that it waived its right to a jury trial in exchange for appellant's waiver of her right to appeal. We disagree.

The Supreme Court has held that a criminal defendant who pleads guilty ordinarily waives the privilege against self-incrimination, the right to trial by jury, and the right to confront accusers. *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The Court has not held, however, that a guilty plea normally waives the right to appeal. *See, e.g.*, *id.* A waiver of the right of appeal, like the waiver of other rights, does

20

require consideration, however, and the Court of Criminal Appeals has addressed the consideration required to support a finding that a defendant has waived her right of appeal several times in the last few years.

*Ex parte Delaney* is particularly on point. 207 S.W.3d 794, 795–99 (Tex. Crim. App. 2006). In that case, a waiver of appeal was executed before the trial court proceeded to adjudicate guilt; it was not bargained for; and there was no recommended sentence. *Id.* at 798. Accordingly, the Court of Criminal Appeals concluded that the defendant's "waiver of appeal was not made knowingly and intelligently regarding the sentencing phase of trial." *Id.* It added, "Even when a waiver is bargained for in exchange for deferred adjudication, if the plea agreement does not contain a recommended punishment to be imposed if guilt is adjudicated, then the waiver may not be knowing and intelligent and thus may not be valid." *Id.* at 798–99. Although a recommended sentence does not guarantee that the defendant will receive the specified sentence, the defendant cannot be certain of the terms of his sentence until he violates the terms of his community supervision and guilt is adjudicated. *Id*. at 799. Because the defendant "could not know what errors might occur at the sentencing phase of trial or what punishment would be assessed if guilt was adjudicated, . . . [his] waiver was not knowing and intelligent and [did] not bar him from appealing from the punishment phase of trial." *Id*. at 799–800.

21

Subsequently, the Court of Criminal Appeals addressed the broader issue of "whether a defendant can voluntarily waive his appeal when sentencing was not agreed upon, but where consideration was given by the State." *Carson*, 559 S.W.3d at 494. *Carson* too is applicable here because the State argues that consideration was given for appellant's waiver of the right to appeal—namely the State's relinquishment of its right to a jury trial. *Id.* (citing *Ex parte Broadway*, 301 S.W.3d 694, 695–96 (Tex. Crim. App. 2009) (holding waiver of right to appeal was valid where State waived right to jury trial in exchange for defendant's right to appeal)). In *Carson*, the court examined the record and found evidence that the defendant "negotiated with the State in order to ensure that he would have his case heard by the trial court, as opposed to a jury." *Id.* at 495. The State had initially represented to the trial court in a pretrial conference that it did not intend to waive its right to a jury trial. *Id.* However, at the guilty-plea hearing, defense counsel told the court that the defendant had "negotiated to get the State to waive a jury" and that the defendant waived his right to appeal to induce the State to waive a jury. *Id.* The State confirmed that it had told defense counsel that the State wanted a jury trial if the defendant intended to appeal, and defense counsel stated that he had explained to the defendant that his best chance at a less severe punishment was for the trial court to assess punishment and, to ensure the trial court assessed punishment, the defendant waived

22

his right to appeal even though he entered an open plea without a sentencing recommendation. *Id.*

Based on these representations, the court determined that the defendant had negotiated for the State to waive its right to a jury trial by waiving his right to appeal:

> Given these exchanges, it is clear that [the defendant's] trial counsel and the prosecutor had discussed the possibility of going to a jury and [the defendant's] desire not to do so. It is also apparent that the State did not want to consent to a bench trial if there was a possibility of a later appeal.

*Carson*, 559 S.W.3d at 495–96. The court held that the defendant's waiver of his right of appeal was made in exchange for consideration given by the State and, thus, was voluntary, knowing, and intelligent. *Id.* at 496.

Unlike in *Carson*, the record on appeal in this case does not reflect that appellant waived her right of appeal in exchange for consideration given by the State. *See id.* To the contrary, the record reflects that appellant and the State negotiated for both parties to give up their right to a jury trial in exchange for appellant's guilty plea—not for her waiver of her right to appeal. The record further reflects that appellant surrendered her right to appeal in advance of the punishment hearing and without a known recommendation by the State as to punishment solely in order to be allowed to seek community supervision for the third time and, thus, she had no knowledge of the sentence to be imposed at the time she signed the waiver. This is exactly the same situation as in *Delaney*, in which the Court of Criminal Appeals

23

held the defendant's waiver of appeal was invalid. *See Delaney*, 207 S.W.3d at 799 (concluding defendant's pretrial waiver of appeal was not voluntary, knowing, or intelligent where plea agreement did not state actual or maximum punishment because "unanticipated errors may occur at the punishment phase of trial"). We see no reason to depart from *Delaney* and *Carson* in this case.

The references to appellant's appeal waiver in her written guilty plea and in the written appeal waiver itself conditioned the waiver on a sentencing recommendation by the State, but the State did not make a recommendation. At appellant's plea hearing, appellant acknowledged that she was waiving her right of appeal, but there was no discussion regarding whether she had bargained or received consideration for the waiver. The trial court's written order accepting appellant's guilty plea stated that appellant voluntarily and knowingly executed a waiver of her right to a jury trial, but it did not mention any waiver of her right to appeal. At her sentencing hearing, the trial court again acknowledged that appellant had waived her right to a jury trial, but again there was no mention of an appeal waiver. The trial court's judgment expressly found "that there was no plea-bargaining agreement between the State and [appellant]," and the judgment did not mention an appeal waiver. The trial court's original certification of appellant's right of appeal stated both that this was a plea-bargain case and appellant had no right of appeal and that appellant had waived her right of appeal.

Because the certificate appeared defective, we abated this appeal after the parties filed their briefs in this Court and remanded the case to the trial court to determine whether its original certificate was defective. The trial court held a hearing at which Coleman, appellant's trial counsel, and Assistant District Attorney Farukhi, the State's trial counsel, both testified as set out above.

After the hearing, the trial court amended its certificate of appellant's right to appeal, certifying that appellant's case "is not a plea-bargain case, and [appellant] has the right of appeal." The trial court issued findings of fact and conclusions of law, including that appellant's plea paperwork stated that appellant waived her right to a jury trial but did not state that the State would waive its right to a jury trial in exchange for appellant's appeal waiver. The court also found that appellant's written waiver of her right of appeal did not mention any consideration provided by the State. Based on its findings, the trial court concluded that there was no evidence showing that appellant's waiver of her right to appeal, even in part, induced the State to waive its right to a jury trial or that appellant's waiver of her right of appeal was bargained for in exchange for the State's waiving its right to a jury trial. The trial court further concluded that the State's waiver of a jury trial was given as consideration for appellant's agreement to plead guilty to two felony offenses, and that appellant thus did not validly waive her right of appeal. Neither party has

25

challenged the trial court's findings and conclusions or amended certificate of appellant's right of appeal.

Because there is no record evidence showing that the State provided any consideration for appellant's waiver of her right to appeal, we conclude that appellant did not enter a voluntary, knowing, or intelligent waiver of that right. *See Carson*, 559 S.W.3d at 496. Our conclusion is supported by the trial court's amended certification of appellant's right of appeal and its findings of fact and conclusions of law accompanying the amended certification, which neither party has challenged. Accordingly, we hold that appellant has not waived her right to appeal the trial court's judgment, and, therefore, we have subject-matter jurisdiction to consider the merits of appellant's remaining issues on appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02; *Carson*, 559 S.W.3d at 492.

**Preservation of Error**

The State argues that appellant waived her sole issue on appeal by presenting a multifarious issue and by not citing the record on appeal. The State contends that appellant's issue is multifarious because appellant argues more than one legal theory in a single issue: (1) that her guilty plea was involuntary due to ineffective assistance of counsel; and (2) that her waiver of appeal is invalid. The State further contends appellant inadequately briefed her issue because she did not cite the record on appeal

26

to support her assertion that she was "wrongly coerced by her attorney to enter an open plea of guilty."

## A.    Multifarious Issue

When an appellant bases a single point of error on more than one legal theory or specific ground, the point of error is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Appellate courts may disregard and refuse to review multifarious points of error, but we may also elect to consider such points of error in the interest of justice. *See id.* ("Because appellant bases his single point of error on more than one legal theory, his entire point of error is multifarious. We will, however, review his arguments in the interest of justice.") (citing TEX. R. APP. P. 38.1); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("[W]e may also elect to consider [multifarious points of error] if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made.") (citation omitted).

We have already determined that appellant's waiver of appeal was invalid and that, therefore, we have jurisdiction over this appeal. Subject-matter jurisdiction is a threshold matter, which we must address in order to determine whether we have the power to address the merits of an appeal. *See Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014) ("We have held that a lack of . . . subject-matter jurisdiction deprives a court of any authority to render a judgment.") (citation omitted); *Tex.*

27

*Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide a case."). Therefore, that issue should not prevent our reaching the merits of the rest of appellant's claims. Moreover, to the extent appellant's issue is multifarious, we can determine with reasonable certainty the errors about which she complains, and we will, therefore, review her remaining arguments in the interest of justice. *See Davis*, 329 S.W.3d at 803; *Stults*, 23 S.W.3d at 205.

## B.      Ineffective Assistance in Entering Guilty Plea and Waiving Appeal

Appellant, in her brief on appeal, blames her entering a guilty plea "on poor advice of her attorney," stating that "she was wrongly coerced and convinced by her attorney to enter an open plea of guilty without benefits of any kind" and that "[she] was coerced and clearly misadvised" into "enter[ing] an open plea without an agreed punishment recommendation . . . ." However, appellant cites no caselaw concerning ineffective assistance of counsel, and she does not argue either that her counsel's performance was deficient or that such a performance prejudiced her, both of which a defendant must show to prevail on a claim of ineffective assistance of counsel. *See, e.g.*, *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("To prevail on his claims [of ineffective assistance of counsel], appellant must first show that his counsel's performance was deficient" because "his counsel's representation fell below the objective standard of professional norms," and, "[s]econd, appellant must

28

show that this deficient performance prejudiced his defense.") (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see also* TEX. R. APP. P. 38.1(i) (requiring "clear and concise argument for the contentions made [in brief on appeal], with appropriate citations to authorities and to the record").

Moreover, an appellant's claims of ineffective assistance must be supported by the record on appeal, which, in a direct appeal such as this one, will "rarely . . . contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation." *See Bone*, 77 S.W.3d at 833 (stating that, because "[a]ppellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance," record on direct appeal will usually be insufficient "to show that counsel's representation was so deficient and lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional"). We have reviewed the record on direct appeal and conclude that it does not support a claim that Coleman's performance was deficient because her performance fell below an objective standard of professional norms or that such performance prejudiced appellant's defense. *See id.*

Moreover, after the parties filed their briefs, including appellant's brief with the language quoted above, we remanded the case to the trial court to consider

whether its original certificate of appellant's right of appeal was defective. At the remand hearing, appellant was represented by her appellate counsel, Hughes, who signed her appellate brief. According to the record of the hearing, which was filed in this Court as a supplement to the record on appeal, Hughes repeatedly represented to the trial court that appellant was not asserting a claim of ineffective assistance of counsel on appeal.

The issue of ineffective assistance arose on remand only when Coleman, who testified at the remand hearing, asserted a claim of attorney-client privilege over communications between appellant and herself. This privilege is generally waived when a criminal defendant asserts a claim of ineffective assistance of counsel. *See, e.g.*, *State v. Thomas*, 428 S.W.3d 99, 106 (Tex. Crim. App. 2014) ("When counsel faces an ineffective-assistance claim, the attorney-client privilege is waived, and trial counsel has the opportunity to explain his actions."). When the trial court asked Hughes if "there [had] been an ineffective assistance claim[,]" Hughes answered "No." During the same hearing, the trial court stated, "I don't believe that there is a writ or anything of that sort alleging ineffective assistance or anything accusatory that would invoke [attorney-client] privilege," to which Mr. Hughes responded, "There's not a writ, Your Honor." *See id.*

During this discussion, the State referred to appellant's brief on appeal, arguing that appellant "does raise peripherally an ineffective assistance of counsel

claim for poor attorney advice." Hughes responded, "I would say poor attorney advice does not rise to the level of an ineffective assistance of counsel." Appellant, who was present at the hearing, did not contradict her counsel's representations or attempt to waive the privilege and assert a claim of ineffective assistance of her trial counsel. *See Carmona v. State*, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997) ("[T]he power to waive the attorney-client privilege belongs to the client, or his attorney or agent both acting with the client's authority.") (citations omitted).

Furthermore, the trial court's findings of fact and conclusions of law, which the trial court issued pursuant to this Court's order after its hearing on remand, expressly concluded, "[Appellant] did not waive her attorney-client privilege because there has been no claim of ineffective assistance of counsel filed by [appellant], nor has [appellant] asserted anything accusatory that would invalidate the privilege and, therefore, the privilege is still in effect." *See Thomas*, 428 S.W.3d at 106. The findings and conclusions were signed and filed by Hughes on behalf of appellant, and the trial court's order adopted appellant's proposed findings and conclusions in their entirety. Neither party has challenged those findings and conclusions in this Court. And, even if they had, we must accept the findings of the trial court as true unless they are refuted by the record. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012); *Ex parte Montano*, 451 S.W.3d 874, 877 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (stating that, when issue is

31

necessarily fact intensive, "a trial court's finding must be accepted on appeal unless it is clearly erroneous").

Based on appellant's lack of briefing on the issue and her appellate counsel's representations at the hearing on remand to the trial court after appellant filed her brief in this appeal, we conclude that appellant has not raised a claim of ineffective assistance of counsel. *See* TEX. R. APP. P. 38.1(i). We therefore turn to whether the record demonstrates that appellant's guilty plea was not knowing and voluntary.

**Guilty Plea**

Appellant argues that her plea of guilty was not knowing or voluntary because she entered an open plea without benefit of a sentencing recommendation "on poor advice of her attorney." Appellant further argues that she intended to go to trial, but after her co-conspirator received a twenty-eight-year sentence, she entered a plea expecting to receive "a much less severe sentence than that which was ultimately imposed," and she thus entered "an unknowing and involuntary plea" of guilty. She also argues that the fact "she entered an open plea without an agreed punishment recommendation suggests, after nearly a year and a half of preparation for trial, that

32

she was coerced and clearly misadvised."[4] The State responds that appellant's guilty plea was knowing and voluntary.

## A.    Standard of Review and Governing Law

The voluntariness of a guilty plea is determined by the totality of the circumstances. *McNeill v. State*, 991 S.W.2d 300, 302 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (citing *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986), and *Edwards v. State*, 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.)). A trial court may accept a guilty plea only if it is entered freely and voluntarily. TEX. CODE CRIM. PROC. ANN. art. 26.13(b). When the record shows that the defendant received statutory admonishments, including on punishment, there is a prima facie showing that the defendant knowingly and voluntarily pleaded guilty. *Mason v. State*, 527 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citation omitted). A defendant who attests that she understands the nature of her plea and that her plea was voluntary carries a "heavy burden" on appeal to show that her plea was involuntary. *Id.* (citation omitted). To meet that burden, the defendant must affirmatively show that she was not aware of the consequences of her plea and that she was misled or harmed by the trial court's erroneous

---

[4]    Despite this language in appellant's brief, we reiterate that, for the reasons we discussed above, we do not read appellant's brief as presenting an issue of ineffective assistance of counsel.

admonishment. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.13(c)) (citations omitted).

**B.     Analysis**

Appellant signed a written guilty plea, "voluntarily enter[ing] [her] plea of guilty" to two counts of first-degree felony offenses, one for theft and one for money laundering, and she acknowledged in written admonishments that the range of punishment for her two charged offenses was "5 to 99 years or life and up to a $10,000 fine." In open court at appellant's plea hearing, appellant pleaded guilty to both counts after the trial court again admonished appellant that she was being charged with two first-degree felony offenses, one each for theft and money laundering, and that "the range of punishment on both of these counts is anywhere from [5] to 99 years or life in the Texas Department of Criminal Justice Institutional Division and an optional fine not to exceed $10,000[.]" Because the record shows that appellant was admonished on the punishment range of the offenses to which she pleaded guilty, there is prima facie evidence that appellant's guilty plea was knowing and voluntary. *McNeill*, 991 S.W.2d at 302 (citing *Ex parte Williams*, 704 S.W.2d 773, 775 (Tex. Crim. App. 1986)).

Appellant argues that her guilty plea was not knowing and voluntary because her attorney gave her "poor advice," she expected to receive "a much less severe sentence than that which was ultimately imposed," and she entered an open plea

without an agreed punishment recommendation, which "suggests" that, after preparing for trial for one-and-a-half years, appellant "was coerced and clearly misadvised." Regarding appellant's argument that she was poorly advised and "coerced and clearly misadvised," appellant does not cite any record evidence supporting her claims, and our review of the record shows that her claims are not supported by the record on appeal. *See McNeill*, 991 S.W.2d at 302 (stating that if record shows defendant was admonished on punishment, burden shifts to defendant to show plea entered without understanding consequences). There is nothing in the record showing what advice Coleman gave her or how such advice was poor or coerced appellant to plead guilty. To the contrary, the record shows that, by signing her guilty plea, appellant acknowledged that she was mentally competent, that she understood the charges against her and all of the admonishments, including on punishment range, and that she "voluntarily enter[ed] her plea of guilty . . . , and [her] plea [was] not influenced by any fear, coercion, or duress, or any persuasion . . . ." Appellant also signed her acknowledgement that she had "consulted fully with [her] attorney before entering [her] plea and [was] satisfied that [her] attorney [had] properly represented [her]."

The thrust of appellant's argument that her plea was unknowing and involuntary is that she entered an open plea without a sentencing recommendation and ultimately received a harsher sentence that she expected. The trial court

35

sentenced appellant to twenty-eight years' imprisonment, matching the sentence of her co-conspirator, Davidson, as the State had argued at appellant's sentencing hearing. The trial court rejected appellant's request that she be placed on community supervision. Although appellant referred to Davidson as "the mastermind behind this situation," the record evidence does not support appellant's expectation that she should have received a less severe sentence. Appellant and her co-conspirators were accused of stealing and laundering more than $8 million over a seven-year period, more than $3 million of which is attributed solely to appellant. At her sentencing hearing, Dr. Kalsi testified about appellant's participation and the amount of money stolen from him by appellant and the others. Cardenas, the economic crimes investigator, also testified about the amount of money appellant stole and laundered, and his testimony was supported by numerous financial documents admitted at the hearing. There was also testimony and evidence that appellant previously had been convicted of felony theft and welfare fraud and sentenced both times to community supervision. After sentencing in this case, the trial court rebuked appellant for, despite being in her fifties, having not "learned a lesson" after her two prior crimes and sentences of community supervision.

Appellant points to no record evidence showing that her guilty plea was not knowing and voluntary despite the severity of the two first-degree felony offenses to which she pleaded guilty, the court's admonishments of the punishment range,

36

and her prior criminal history. *See Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."); *Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017) ("A guilty plea is valid only if it is 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'") (citation omitted). Appellant was admonished that she could be punished anywhere from five to ninety-nine years or life, and her sentence fell within that range. *See Mason*, 527 S.W.3d at 509 (stating standard to show guilty plea was involuntary and unknowing is that defendant was unaware of plea consequences and misled or harmed by trial court's erroneous admonishment); *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) ("Simpson's sentence fell well within the statutory range . . . . Accordingly, there is no reason to compare his sentence to sentences imposed on others—including the probated sentence of the main actor in this case.") (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010), and *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992)).

Because appellant attested that she understood the nature of her plea and that her plea was voluntary, she had a heavy burden on appeal to prove that her guilty plea was actually involuntary. *See Mason*, 527 S.W.3d at 509. We hold that, on this record, appellant has not affirmatively met her heavy burden to show that the court's

admonishments left her unaware of the consequences of her plea, or that she was misled and harmed by pleading guilty. *See id.*

We overrule appellant's issue.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

Publish. TEX. R. APP. P. 47.2(b).