**Opinion issued June 24, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00788-CR

———————————

**JARAD MONROE FALLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Case No. 21-CR-2266

## MEMORANDUM OPINION

Jarad Monroe Falls appeals the trial court's judgment revoking his community supervision, finding him guilty of the originally charged offense, and sentencing him to ten years' confinement. Falls contends the trial erred because he was not properly admonished about the consequences of either his original guilty

plea or pleas of true to violations of his community-supervision conditions, such that his pleas were neither free nor voluntary. *See* TEX. CODE CRIM. PROC. art. 26.13(b). Because the record shows Falls was properly admonished prior to his original plea, and because Falls admitted to violating multiple terms of his community supervision independent of his pleas, we affirm.

## Background

### A. Falls's guilty plea to aggravated assault with a deadly weapon

In 2022, Falls pled guilty to aggravated assault with a deadly weapon. Before he did so, Falls signed a document entitled "Written Plea Admonishments-Waivers-Stipulations." The admonishments recite the charged offense and then provide: (1) "**If convicted, you face the following range of punishment:** . . . A term of not more than 20 years or less than 2 years in [prison] and, in addition, a possible fine not to exceed $10,000.00"; and (2) "If the Court defers adjudicating your guilt and places you on community supervision, a violation of any condition of community supervision may result in proceedings being initiated whereby you are arrested and detained . . . . [A]fter adjudication of guilt the punishment assessed may be any term within the range for the offense and is not limited to the term of community supervision."

In the admonishments, Falls acknowledged that he "**understand[s] the foregoing admonishments from the Court and [is] aware of the consequences**

2

**of [his] plea**," that he is "**mentally competent**," and that his "**plea is freely and voluntarily made.**" Both Falls and his trial counsel signed the admonishments.

Based on Falls's guilty plea and the mutual recommendation of Falls and the State, the trial court entered an order of deferred adjudication, placing Falls under community supervision for five years. The trial court's order imposed several conditions on Falls for the term of his community supervision, including that he not violate any laws, that he abstain from the use of alcohol and illicit drugs, that he pay various court costs, that he perform community service, that he complete certain substance abuse and anger management programs, and that he make regular visits to his supervision officer.

## B.    Falls's pleas at revocation hearing

In 2023, the State filed a motion asserting Falls had violated the conditions in sixteen ways, alleging Falls had admitted to his supervision officer, and tested positive for, illicit drugs and had failed to pay certain court costs, perform community service, and complete anger-management and substance-abuse programs.

The trial court conducted a hearing on the State's motion. In the first portion of the hearing, the State read each of the sixteen ways in which it alleged Falls had violated the conditions, and the trial court asked Falls how he pled to each of those allegations. The trial court did not admonish Falls of the consequences of pleading

3

true to the State's allegations, and Falls made comments indicating he did not understand the questions being asked of him. For example, when asked how he pled to one of the State's allegations, Falls replied, "I feel like I am not getting proper counsel and I feel like I am being railroaded right now, sir." In response to another such question, Falls said, "I don't understand what's going on. . . . I'm having a hard time comprehending this situation." And Falls told the trial court his defense counsel was "telling me that I'm getting a year every time I say not true, but he's telling me to say not true" (defense counsel disputed this statement). Falls ultimately pled "not true" to ten of the alleged violations, and "true" to the remaining six.

After taking Falls's pleas, the trial court conducted a contested hearing on the State's motion. Falls's supervision officer testified that Falls violated the terms of his community supervision in all the ways the State alleged. The supervision officer based his testimony on his meetings with Falls in which he failed drug tests and admitted to continued drug use, and on Falls's failures to self-surrender, pay court costs, and complete community-service hours and substance-abuse and anger-management programs.

During his testimony, Falls admitted to almost all of these violations, although he attributed one of his failed drug tests to taking a pill he was unaware contained illicit drugs. With regards to the original offense of aggravated assault

with a deadly weapon, Falls admitted during his revocation hearing that he "did point a knife at someone" and "brandished a weapon." Falls also testified that he understood the range of punishment for his original offense "is 2 to 20 years in prison . . . and no one has to give [him] probation."

At the conclusion of the hearing, the trial court found twelve of the sixteen community supervision violations alleged by the State to be true. The trial court also found that Falls committed the original offense of aggravated assault with a deadly weapon. The trial court entered judgment finding Falls guilty of the assault, revoking his community supervision and imposing a sentence of ten years' confinement.

## Analysis

In a single issue, Falls contends the trial court erred because he was not properly admonished about the consequences of his pleas, either at the time of his original plea or during his revocation hearing.

### A.  Falls was properly admonished prior to his original plea

Falls first contends the trial court failed to admonish him before he entered his guilty plea to the original offense of aggravated assault with a deadly weapon.

Before accepting a guilty plea, trial courts are required to provide a defendant with certain admonishments, including an admonishment on the range of punishment attached to an offense and the fact that the recommendation of the

5

prosecuting attorney as to punishment is not binding on the court. TEX. CODE CRIM. PROC. art. 26.13(a). And trial courts must refuse to accept a guilty plea "unless it appears that the defendant is mentally competent and the plea is free and voluntary." *Id*. art. 26.13(b).

In determining whether a guilty plea was voluntary, we look at the totality of the circumstances. *Thomas v. State*, 615 S.W.3d 552, 568 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "When the record reveals that statutory admonishments were given, it constitutes a prima facie showing that the defendant knowingly and voluntarily pleaded guilty." *Mason v. State*, 527 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Generally, the admonishments can be given either orally or in writing. TEX. CODE CRIM. PROC. art. 26.13(d).

Once this prima facie showing is made, "the burden shifts to the defendant to show that he entered the plea without understanding the consequences." *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). And an "accused who attests that he understands the nature of his guilty plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary." *Starz v. State*, 309 S.W.3d 110, 117 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). To meet this heavy burden, "the record must demonstrate the defendant's lack of comprehension of the proper punishment range and the manner

6

in which he was misled or harmed."  *In re T.W.C.*, 258 S.W.3d 218, 222 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Here, the record establishes Falls signed written admonishments of the range of punishment for the charged offense and that the trial court would not be bound by the State's recommendation, acknowledging he understood both the admonishments and the consequences of his plea.  The State thus made a prima facie showing that Falls "knowingly and voluntarily pleaded guilty."  *Mason*, 527 S.W.3d at 509.  Falls does not offer any evidence or argument to rebut this showing and fails to carry the heavy burden of establishing that his plea to the original offense was involuntary.  *Starz*, 309 S.W.3d at 117.

**B.    The trial court was not required to admonish Falls at the revocation hearing**

Falls also contends the trial court erred by failing to admonish him at the revocation hearing before accepting his pleas to the State's allegations that he violated conditions of his community supervision.  Falls argues that in the absence of such admonishments, his pleas could not have been made voluntarily.

While a defendant's plea of true at a revocation hearing must be knowing and voluntary, an admonishment is not a necessary precondition to a voluntary plea.  *See Gutierrez v. State*, 108 S.W.3d 304, 309 (Tex. Crim. App. 2003) ("[I]n the context of revocation proceedings, the legislature . . . has not required the court to . . . admonish the defendant pursuant to 26.13."); *Harris v. State*, 505 S.W.2d

7

576, 578 (Tex. Crim. App. 1974) (The "admonishments provided for in Article 26.13 . . . do not apply in revocation of probation proceedings"). Thus, Falls's argument fails.

## C.     The trial court did not abuse its discretion in revoking Falls's community supervision

Finally, Falls argues certain statements he made during the revocation hearing show he "did not fully understand the procedures," and thus that the trial court's revocation of his community supervision was in error.

We review a trial court's decision to revoke community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). In doing so, we examine the evidence for revocation in the light most favorable to the trial court's judgment. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). And the trial judge is the sole trier of fact at a revocation hearing, determining the credibility of the witnesses and the weight to be given their testimony. *Battle v. State*, 571 S.W.2d 20, 22 (Tex. Crim. App. 1984).

The State bears the burden of proving the defendant violated a term of his community supervision by a preponderance of the evidence. *Hacker*, 389 S.W.3d at 864–65. Proof that the defendant violated a single term of his community supervision is sufficient to support a trial court's decision to revoke. *Cazarez v. State*, 606 S.W.3d 549, 559 (Tex. App.—Houston [1st Dist.] 2020, no pet.). A plea of true to a single violation is enough for a trial court to revoke, and "once a

plea of true has been entered, a defendant may not challenge the sufficiency of the evidence to support the subsequent revocation." *Moore v. State*, 11 S.W.3d 495, 498 n.1 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Falls argues that statements he made during the revocation hearing in response to the trial court's questions as to how he pled—remarks such as, "I don't understand what's going on"—indicate his pleas were not voluntary. According to Falls, these comments mean the trial court abused its discretion in revoking his community supervision.

But even if we assume Falls did not voluntarily enter his pleas of true, the trial court had ample other evidence on which to base its revocation decision. For example, one condition of Falls's community supervision prohibited him from using or possessing illicit drugs. Falls testified that he continued using methamphetamine and marijuana, and tested positive for cocaine and methamphetamine, after being placed under community supervision. Another condition required Falls to make "serious attempts" to find employment, but Falls admitted he "wasn't making an effort" to get a job due to his substance abuse. Still another condition required Falls to perform community service, but Falls admitted he failed to do so because he "wasn't making a full-fledged effort at that time" and "was not being diligent at all," for which he agreed there was "no excuse." And another condition required Falls to enroll in an anger management program, which

9

he agreed he did not do because he was "not being diligent in my . . . responsibilities with my probation."

These (and other) admissions by Falls, as well as the supervision officer's testimony, gave the trial court sufficient evidence to conclude he violated multiple terms of his community supervision, independent of any of Falls's pleas. And because a single violation would have provided grounds for revocation, Falls's admission during his testimony to multiple violations means the trial court did not abuse its discretion in revoking his community supervision. *Cazarez*, 606 S.W.3d at 559. Therefore, even assuming Falls made his pleas at the revocation hearing involuntarily, any resulting error was harmless and does not provide grounds for reversal. *See* TEX. R. APP. P. 44.2.

### Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

10